

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Ft. Lauderdale Division)

CASE NO. 00-6937-CIV-FERGUSON/SNOW

LAW OFFICES OF DAVID J.
STERN, P.A. and DAVID J.
STERN, individually,

    Plaintiffs,

vs.

LEGION INSURANCE COMPANY,

    Defendant.

_____/

## AMENDED COMPLAINT

Plaintiffs, Law Offices of David J. Stern, P.A. ("the Law Firm") and David J. Stern ("Stern"),
sue Defendant, Legion Insurance Company ("Legion"), and state:

### General Allegations

1.    The Law Firm is a Florida professional association located in Broward County, which
engages in the practice of law throughout the State of Florida. The Law Firm's practice consists of,
among other things, filing foreclosure actions on behalf of institutional lender clients in order to
enforce the terms of notes and mortgages in default.

2.    Stern is a Florida resident and the sole shareholder, officer and director of the Law
Firm.

3.    Legion is a Pennsylvania corporation authorized to do business in Florida and doing
business in Broward County, Florida. Legion sells insurance policies to Florida residents, including
professional liability policies for lawyers.

4.    This Court has jurisdiction in this matter based upon diversity of citizenship between
Plaintiffs and Defendant, pursuant to 28 U.S.C. Section 1332 and by virtue of the removal of this



1

matter by Legion to the United States District Court under 28 U.S.C. Sections 1441 and 1446 by Notice of Removal.

5.    On or about January 28, 1998, the Law Firm, as the insured, and Legion, as the insurer, entered into a lawyers' professional liability policy #PL1-05244597 (the "1998 Policy"). A true and correct copy of the 1998 Policy is attached hereto and incorporated herein as **Exhibit "A."** The policy period for the 1998 Policy is for claims made from January 9, 1998 through January 9, 1999 ("1998 Policy Period"). The 1998 Policy provides a single claim limit of liability of $500,000 and an aggregate claim limit of liability of $1,500,000.

6.    On or about January 18, 1999, the Law Firm, as the insured, and Legion, as the insurer, entered into a second lawyers' professional liability policy #PL 1-0654864 (the "1999 Policy"). A true and correct copy of the 1999 Policy is attached hereto and incorporated herein as **Exhibit "B."** The policy period for the 1999 Policy is for claims made from January 9, 1999 through January 9, 2000 ("1999 Policy Period"). The 1999 Policy provides a single claim limit of liability of $1,000,000 and an aggregate claim limit of liability of $3,000,000.

7.    Stern is also an insured under the 1998 and 1999 Policies as defined therein.

8.    In or about December 1998, three plaintiffs, against whom the Law Firm had previously filed foreclosure actions on behalf of different institutional lenders for defaults under different loans, sued the Law Firm and Stern for unfair debt collection practices, in a multi-plaintiff lawsuit styled *Theodora Bryant, Mary L. Walker, Earnest Jack Welch, Barbara Jean Slocum, individually and on behalf of all others similarly situated vs. Law Offices of David J. Stern, P.A. and David J. Stern, individually,* in the United States District Court, Northern District of Florida, Tallahassee Division, Case No. 4:99cv317-RH (the "Multi-Plaintiff Lawsuit"). The plaintiffs, some of whom were foreclosed against and some of whom reinstated their notes and mortgages, asserted a variety of different claims. Generally, they alleged that the Law Firm and Stern had overcharged them various amounts of attorneys' fees and costs in their  separate foreclosure actions or loan

2

reinstatements. A true and correct copy of the Complaint in the Multi-Plaintiff Lawsuit, without exhibits, is attached hereto as **Exhibit "C."**

9.      On December 9, 1998, the Law Firm and Stern gave Legion timely written notice of the Multi-Plaintiff Lawsuit in accordance with the terms of the 1998 Policy. A copy of the written notice is attached hereto as Exhibit **"D."**

10.     Pursuant to the terms of the 1998 Policy, Legion was obligated to defend the Law Firm and Stern against the plaintiffs' claims in the Multi-Plaintiff Lawsuit because the plaintiffs alleged wrongful acts which were potentially covered under the 1998 Policy.

11.     In response to the Law Firm's and Stern's notice, Legion, without input or approval from Stern or the Law Firm, appointed defense counsel to represent them in the Multi-Plaintiff Lawsuit in contravention of section 627.426(2)(b)(3), Florida Statutes, and sent a letter to the Law Firm and Stern advising them of which counsel they had retained. A copy of the letter is attached hereto as **Exhibit "E."**

12.     Furthermore, Legion failed to give the Law Firm or Stern timely written notice of its reservation of rights to assert a coverage defense, in contravention of section 627.426(2)(a), Florida Statutes.

13.     Stern and the Law Firm informed Legion that they rejected the counsel independently selected by Legion to represent them in the Multi-Plaintiff Lawsuit because that counsel was not competent to handle the complex legal issues involved in the litigation. However, Legion refused to retain different counsel on their behalf. Consequently, the Law Firm and Stern retained separate counsel, the law firm of Ruden McClosky Smith Schuster and Russell, P.A. ("Ruden"), to represent them in the Multi-Plaintiff Lawsuit.

14.     During the prosecution of the Multi-Plaintiff Lawsuit, Legion failed to communicate with the Law Firm and Stern and their retained counsel with regard to their defense. Additionally, Legion failed to pursue settlement opportunities in the Multi-Plaintiff Lawsuit that were available early in the litigation. If Legion had pursued settlement in a timely and proper manner early in the

3

case, the liability exposure of the Law Firm and Stern in the Multi-Plaintiff case would have been substantially reduced.

15.     As a result of Legion's refusal to pursue settlement, the Multi-Plaintiff Lawsuit continued. The Law Firm and Stern repeatedly advised Legion that its reckless disregard for their rights had severely prejudiced them by exposing them to greater liability.

16.     On our about October 4, 1999, the Multi-Plaintiff Lawsuit was amended and another plaintiff, Barbara Jean Slocum ("Slocum"), was joined. Slocum asserted a separate claim under Federal law for unfair debt collection practices, significantly increasing the Law Firm's and Stern's potential liability exposure in the Multi-Plaintiff Lawsuit. A copy of the plaintiffs' Second Amended Complaint in the Multi-Plaintiff Lawsuit, without exhibits, is attached hereto as **Exhibit "F."** Slocum's claim, which was made during the 1999 Policy Period, is covered by the 1999 Policy.

17.     Shortly thereafter, the Law Firm and Stern sent Legion a copy of the plaintiffs' Second Amended Complaint. Legion was obligated to defend the Law Firm and Stern against the new claim raised by Slocum in the Second Amended Complaint because she alleged wrongful acts which were potentially covered under both the 1998 Policy and the 1999 Policy.

18.     Legion has refused to acknowledge coverage for the various claims asserted in the Multi-Plaintiff Lawsuit. Moreover, without any investigation into the various plaintiffs' claims, Legion has specifically denied coverage in the amount of the aggregate limits of liability under the 1998 and 1999 Policies, on the grounds that the various claims asserted in the Multi-Plaintiff Lawsuit constitute a "single claim"under the 1998 Policy, because they arose out of a "series of related wrongful acts."

19.     The 1998 and 1999 Policies, on page 4, state in pertinent part:

> **Limits of Liability**
> All claim expenses shall be subtracted from the applicable limit of our liability.   The remainder is the amount available to pay settlements or judgment.
>
> The limit of liability stated in the Declarations as "Each Claim" is the most we will pay for all claims and claim expenses that result from

4

CASE NO. 00-6937-CIV-FERGUSON/SNOW

a single wrongful act or from a series of related wrongful acts. **Two (2) or more claims arising out of a single wrongful act or a series of related wrongful acts shall be treated as single claim. All such claims whenever made, shall be considered first made during the policy period or extended reporting period, if purchased, in which the earliest claim arising out of such wrongful act or related wrongful act was first made and all such claims shall be subject to the same limit of liability.** The inclusion herein of more than one of you or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase our limit of liability.

The limit of liability stated in the Declarations as "Policy Aggregate" is, subject to the above paragraph, the most we will pay for all claims reported to us during the policy period or extended reporting period and their resulting claim expenses.

(emphasis added).

20.     Contrary to Legion's assertion, pursuant to the terms of the 1998 and 1999 Policies, the claims asserted against the Law Firm and Stern in the Multi-Plaintiff Lawsuit are covered by the aggregate claim limit of liability for the 1998 Policy of $1,500,000 and the aggregate claim limit of liability for the 1999 Policy of $3,000,0000 because the claims are not causally or logically related to one another. The claims arise out of separate factual circumstances, relate to separate alleged wrongful acts or omissions by the Law Firm and Stern, and give rise to separate causes of action. Specifically, the plaintiffs' claims arise out of separate foreclosure actions prosecuted by different attorneys, on behalf of different institutional lenders, utilizing different title search and examination methods and allegedly resulting in different overcharges of attorneys' fees and costs.

21.     In or about July 1999, Legion agreed to substitute Ruden for the counsel it originally appointed to defend the Law Firm and Stern in the Multi-Plaintiff Lawsuit and to pay all attorneys' fees and costs charged by Ruden thereafter, at specially agreed-upon hourly rates.

22.     However, the Law Firm and Stern had incurred approximately $100,000 in attorneys' fees and costs with Ruden for defending them in the Multi-Plaintiff Lawsuit through October 31, 1999 which should have also been paid by Legion.

5

23.     The 1998 and 1999 Policies state on page 3, in pertinent part:

**Claim expenses means:**
A.      fees, costs and expenses charged by any lawyer we designate;
B.      all other fees, costs, interest and expenses resulting from the
        investigation, settlement, defense and appeal of a claim, if
        incurred by us, or with our written consent, by you;

24.     Pursuant to the terms of the 1998 and 1999 Policies, Legion is obligated to pay the attorneys' fees and costs charged by Ruden for defending the Law Firm and Stern in the Multi-Plaintiff Lawsuit.

25.     Notwithstanding, and in contravention of the 1998 and 1999 Policies, as well as Section 627.426(2)(b)(3), Florida Statutes, Legion refused to reimburse the Law Firm and Stern for the attorneys' fees and costs they paid Ruden for defending them in the Multi-Plaintiff Lawsuit through October 31, 1999, and refused to remit payment directly to Ruden for all of the subsequently incurred attorneys' fees and costs. Moreover, Legion refused to acknowledge coverage under the Policies for the Multi-Plaintiff Lawsuit up to the aggregate limits of liability.

26.     On October 28, 1999, and November 19, 1999, Plaintiffs again made written demand on Legion to satisfy the attorneys' fees claim and acknowledge coverage under the Policies for the Multi-Plaintiff Lawsuit up to the aggregate limits of liability.

27.     On November 23, 1999, Plaintiffs filed a Civil Remedy Notice with the Department of Insurance against Legion (the "Bad Faith Notice") in accordance with section 624.155, Florida Statutes. A true and correct copy of the Bad Faith Notice is attached hereto and incorporated herein as **Exhibit "G."**

28.     Legion failed to respond to the Law Firm's and Stern's demands and the Bad Faith Notice and to settle those claims within sixty days.

29.     In February 2000, a mediation was held in the Multi-Plaintiff Lawsuit. During the mediation, Legion again took the position that the multiple claims in the Multi-Plaintiff Lawsuit were a single claim under the terms of the 1998 Policy. Furthermore, at the mediation, Legion

6

CASE NO. 00-6937-CIV-FERGUSON/SNOW

refused to acknowledge that it had agreed to the hiring of Ruden to defend the Law Firm and Stern in the Multi-Plaintiff Lawsuit and agreed to pay Ruden's attorneys' fees and costs.

30.     During the mediation, a settlement was reached in the Multi-Plaintiff Lawsuit. All of the plaintiffs' claims, except their claims for injunctive relief (see below) were fully and finally settled for $2,100,000 to $2,200.00. Although Legion refused to provide any coverage for the settlement, its representatives at the mediation confirmed that the settlement amount was reasonable, participated in settlement discussions and consented to the terms of settlement to resolve the Multi-Plaintiff Lawsuit.

31.     On March 8, 2000, the Law Firm and Stern, once again demanded in writing that Legion honor its obligations under the 1998 and 1999 Policies and provide coverage for the settlement. At a minimum, the Law Firm and Stern demanded that Legion tender the single claim limit under the 1998 Policy, without the Law Firm and Stern waiving any of their claims for the aggregate policy limits. A copy of the March 8, 2000, letter is attached hereto as **Exhibit "H."**

32.     Again, Legion ignored the Law Firm's and Stern's demands and instead, on March 10, 2000, Legion belatedly sent the Law Firm and Stern a reservation of rights letter for the first time.

33.     On March 30, 2000, Plaintiffs filed a second Civil Remedy Notice with the Department of Insurance against Legion (the "Second Bad Faith Notice") in accordance with section 624.155, Florida Statutes, which Legion failed to respond to within sixty days. A true and correct copy of the Second Bad Faith Notice is attached hereto and incorporated herein as **Exhibit "I."**

34.     On March 30, 2000, the mediation settlement was conditionally approved by the Court in the Multi-Plaintiff Lawsuit. The parties entered into a Stipulation of Settlement with regard to all of the plaintiffs' claims, except those claims for injunctive relief, and a settlement class was certified by the Court for settlement purposes only.

35.     On August 10, 2000, Legion executed a written consent to the settlement, a copy of which is attached hereto as **Exhibit "J."**

7

CASE NO. 00-6937-CIV-FERGUSON/SNOW

36.     On September 26, 2000, the parties in the Multi-Plaintiff Lawsuit entered into a Stipulation of Settlement of the claims for injunctive relief, in which the Law Firm and Stern agreed to pay an additional $50,000 in full and final settlement of all of the plaintiffs' claims for injunctive relief. Thereafter, the Court approved the final settlement of the Multi-Plaintiff lawsuit for the sum of $2,150,000.

37.     The Law Firm's and Stern's obligation to pay for its alleged wrongful acts in connection with its rendering of legal professional services has been decided by virtue of the consummated court-approved settlement in the Multi-Plaintiff Lawsuit and Legion's consent thereto. Accordingly, the Law Firm's and Stern's claims against Legion are ripe, in accordance with the terms of the 1998 and 1999 Policies, which state in pertinent part:

> [Legion] will pay compensatory amounts for covered claims and claim expenses, up to [Legion's] limit of liability, which [the Law Firm and Stern] become obligated to pay as a result of a wrongful act in rendering or failing to render legal professional services by [the Law Firm or Stern] or by anyone for whom [the Law Firm and Stern] are legally liable.

(emphasis added)

38.     The Law Firm and Stern have fully complied with all of the provisions of the 1998 and 1999 Policies.

39.     Notwithstanding, Legion's prior agreement to pay the Law Firm and Stern's attorneys' fees and costs incurred with Ruden, and the two prior Civil Remedy Notices, Legion delayed until September 2000, to begin to pay Ruden for the majority of the attorneys' fees and costs incurred in defending the Multi-Plaintiff Lawsuit. Legion has still not paid Ruden all of the fees and costs incurred. Further, Legion has not reimbursed the Law Firm and Stern for the fees and costs of approximately $100,000 incurred through October 31, 1999. Moreover, Legion failed to confirm its obligation to pay those fees and costs until May 9, 2000, during the pendency of this action. A true and correct copy of the pertinent correspondence is attached hereto as **Exhibit "K."**

8

CASE NO. 00-6937-CIV-FERGUSON/SNOW

40.     All conditions precedent to the filing of this action have been performed, satisfied or waived.

41.     The Law Firm and Stern have retained the undersigned law firm and agreed to pay the firm a reasonable fee for its services. Pursuant to the terms of the Policies, the Law Firm and Stern are entitled to recover their reasonable attorneys' fees and costs in prosecuting this action from Legion.

## Count I - Breach of Contract

42.     This is an action for damages for breach of the 1998 and 1999 Policies.

43.     The Law Firm and Stern reallege and incorporate the allegations in paragraphs 1 through 41 above.

44.     Legion has breached the 1998 and 1999 Policies by:

    a.     refusing to timely and fully pay the attorneys' fees and costs incurred to defend the Law Firm and Stern in the Multi-Plaintiff Lawsuit;

    b.     refusing to communicate with the Law Firm and Stern in a timely and reasonable manner regarding the defense of the Multi-Plaintiff Lawsuit;

    c.     refusing to investigate and attempt to settle the claims in the Multi-Plaintiff Lawsuit;

    d.     by failing to comply with the Claims Administration Statute, Section 627.426(2), Florida Statutes, thereby breaching its duty to defend; and

    e.     refusing to provide coverage for the claims made in the Multi-Plaintiff Lawsuit up to the aggregate policy limits under the 1998 and 1999 Policies.

45.     As a result of Legion's breach of the Policies, the Law Firm and Stern have been damaged.

WHEREFORE, Plaintiffs, Law Offices of David J. Stern, P.A. and David Stern, move this Court for entry of judgment against Defendant, Legion Insurance Company, for an award of

9

damages, interest, costs and attorneys' fees, and any such other and further relief this Court deems just and proper.

## Count II - Declaratory Judgment

46.     This is an action for declaratory relief pursuant to 28 U.S.C. Section 2201 and Chapter 86, Florida Statutes (1999).

47.     The Law Firm and Stern reallege and incorporate the allegations in paragraphs 1 through 41 above.

48.     Legion asserts that the various claims alleged in the Multi-Plaintiff Lawsuit are subject to the 1998 Policy's single claim limit of liability of $500,000, because all of the claims resulted from "a series of related wrongful acts."

49.     The Law Firm and Stern assert that the claims in the Multi-Plaintiff Lawsuit are subject to the aggregate limits of liability under both the 1998 and 1999 Policies of $1,500,000 and $3,000,000, respectively, because the claims are independent since they did not result from "a series of related wrongful acts." Rather, the claims arise out of separate factual circumstances, relate to separate alleged wrongful acts or omissions by the Law Firm and Stern, and give rise to separate causes of action. Specifically, the plaintiffs' claims arise out of separate foreclosure actions, prosecuted by different attorneys, on behalf of different institutional lenders, utilizing different title search and examination methods, and allegedly resulting in different overcharges of attorneys' fees and costs.

50.     Furthermore, the Law Firm and Stern assert that Legion is not permitted to deny coverage based on any particular coverage defense because of its violation of section 627.426, Florida Statutes, for failing to timely give the Law Firm and Stern notice of its reservation of rights and failing to timely retain "independent counsel which is mutually agreeable to the parties." Section 627.426(2), Florida Statutes, states in pertinent part:

> (2) A liability insurer shall not be permitted to deny coverage based
> on a particular coverage defense unless:

10

(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; **and**

(b) Within 60 days of compliance with paragraph (a) or receipt of a summons or complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

\* \* \*

3. Retains independent counsel which is mutually agreeable to the parties. . . .

51.     In addition, the Law Firm and Stern assert that Legion is not permitted to challenge the reasonableness of the settlement of the Multi-Plaintiff Lawsuit, based on its prior consent thereto and its breach of its duty to defend.

52.     A bona fide dispute exists between the parties as to the amount of coverage available to the Law Firm and Stern under the 1998 and 1999 Policies with regard to the Law Firm's and Stern's settlement of the claims asserted in the Multi-Plaintiff Lawsuit.

53.     Therefore, the parties are in doubt as to their legal rights and obligations under the 1998 and 1999 Policies with regard to the claims asserted in the Multi-Plaintiff Lawsuit and require a declaratory judgment of this Court to resolve the dispute regarding the parties' respective interpretations of coverage under the 1998 and 1999 Policies.

WHEREFORE, Plaintiffs, Law Offices of David J. Stern, P.A. and David Stern, move this Court to enter judgment declaring and adjudicating the respective rights and obligations of the parties under the 1998 and 1999 Policies and specifically declaring that the separate, distinct and multiple claims asserted in the Multi-Plaintiff Lawsuit are subject to the aggregate limits of liability under both Policies, awarding Plaintiffs their reasonable attorneys' fees and costs incurred herein, and awarding such other and further relief as it may deem just and necessary to enforce the provisions of the 1998 and 1999 Policies as may be construed by the Court.

11

CASE NO. 00-6937-CIV-FERGUSON/SNOW

## Count III - Bad Faith

54.    This is an action for damages for bad faith in violation of section 624.155, Florida Statutes.

55.    The Law Firm and Stern reallege and incorporate the allegations in paragraphs 1 through 41 above.

56.    As set forth in **Exhibit "K,"** Legion has acknowledged its duty to defend the Law Firm and Stern in the Multi-Plaintiff Lawsuit.

57.    However, Legion has acted in bad faith by failing to defend the Law Firm and Stern in the Multi-Plaintiff Lawsuit, and reimburse the Law Firm and Stern for the attorneys' fees and costs incurred in defending the Multi-Plaintiff Lawsuit.

58.    Under all the circumstances, Legion could have and should have defended the Law Firm and Stern in the Multi-Plaintiff Lawsuit, by timely reimbursing the Law Firm and Stern completely for the attorneys' fees and costs they paid Ruden to defend them in the Multi-Plaintiff Lawsuit and timely remitting payment directly to Ruden for all of the subsequently incurred attorneys' fees and costs, had Legion acted fairly and honestly toward them and with due regard for their interests.[1]

59.    In fact, under the circumstances, Legion, at a minimum, should have applied the 1998 Policy single claim limit of liability of $500,000 toward the attorneys' fees and costs, had it acted fairly and honestly toward the Law Firm and Stern and with due regard for their interests.

60.    As a result of Legion's bad faith, the Law Firm and Stern have been damaged.

61.    Legion was provided with two (2) Civil Remedy Notices under Section 624.155 Florida Statutes advising of the foregoing conduct in violation of the statute, which were copied to the Department of Insurance.   Legion failed to remedy its violations of the statute or pay the

---

[1] Legion has also acted in bad faith by:  failing to investigate the claims in the Multi-Plaintiff Lawsuit; failing to negotiate in good faith toward a settlement of the Multi-Plaintiff Lawsuit; and by refusing to tender the aggregate limits of liability of the 1998 and 1999 Policies toward the settlement of the claims in the Multi-Plaintiff Lawsuit.  Once the Court has established coverage under the Policies for the claims in the Multi-Plaintiff Lawsuit, the Law Firm and Stern will seek to amend this count to assert the additional acts of bad faith.

12

damages sustained by the Law Firm and Stern within the sixty (60) days of filing of the Civil Remedy Notices.

WHEREFORE, Plaintiffs, Law Offices of David J. Stern, P.A. and David J. Stern, move this Court for entry of judgment against Defendant, Legion Insurance Company, for an award of damages, interest, costs and attorneys' fees, as well as an award of punitive damages and any such other and further relief as it may deem just and proper.

## Jury Trial Demanded

Plaintiffs demand a trial by jury for all issues so triable. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

WE HEREBY CERTIFY that a true and correct copy of the foregoing was this 7th day of November, 2000, faxed (without exhibits) and mailed to Andrew Seiden, Esq., Seiden, Alder, Rothman, Petosa & Matthewman, P.A., Attorneys for Defendant, 2300 Glades Rd., West Tower, Suite 340, Boca Raton, Florida 33431.

Respectfully submitted,

TOBIN & REYES, P.A.
Attorneys for Plaintiffs
7251 W. Palmetto Park Rd., Suite 205
Boca Raton, Florida 33433
Phone: (561) 620-0656
Fax:   (561) 620-0657

BY
Ricardo A. Reyes

I:\A C\RAR Files\Stern\Legion\amd complaint final

13

 

## LEGION INSURANCE COMPANY

### DECLARATIONS

### LAWYERS PROFESSIONAL LIABILITY

Policy Number:     PL1 0524957

### NOTICE: THIS IS A CLAIMS MADE POLICY

THE COVERAGE OF THIS POLICY IS LIMITED TO CLAIMS WHICH ARE FIRST MADE AGAINST YOU AND REPORTED TO AND RECEIVED BY US, IN WRITING, DURING THE POLICY PERIOD OR DURING AN EXTENDED REPORTING PERIOD ISSUED BY US. CLAIMS MUST ARISE FROM WRONGFUL ACTS WHICH COMMENCE ON OR AFTER THE RETROACTIVE DATE SPECIFIED IN THE DECLARATIONS. THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS WILL BE FIRST REDUCED BY AMOUNTS INCURRED FOR CLAIM EXPENSES. YOU MUST READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS COVERED AND WHAT IS NOT COVERED.

1. **NAMED INSURED:**     David J. Stern, P.A. and Professional Title & Abstract Company

2. **ADDRESS OF NAMED INSURED:**     801 South University Drive
   Suite 500
   Plantation, FL 33324-

3. **POLICY PERIOD:**     FROM:  1/9/98          TO:   1/9/99

4. **RETROACTIVE DATE:**     1/1/94

5. **LIMITS OF LIABILITY:**     (Inclusive of "Claim Expenses" as defined in this policy.)
   A. Each claim                          $500,000
   B. Policy Aggregate                    $1,500,000

6. **DEDUCTIBLE:**     Applicable to all claims, inclusive of "Claims Expenses", as defined in this policy is

   $10,000

7. **PREMIUM:**     $44,920.00

8. THIS DECLARATION ATTACHES TO AND BECOMES A PART OF THE POLICY. THIS DECLARATION TOGETHER WITH THE POLICY FORM AND THE ENDORSEMENTS LISTED BELOW SHALL CONSTITUTE THE CONTRACT BETWEEN THE NAMED INSURED AND THE COMPANY.

   Endorsements:     460938 (6-96)
                     460490 (5-96)

9. **NOTICES:** All notices required to be given to the Company under this policy shall be addressed to:

   Rigdon, Powers & Gioia
   3033 Ogden Avenue Suite 300
   Lisle, Illinois 60532-1673

Authorized Signature          **EXHIBIT "A"**          Date          1/13/99

410050 (5-96)

## Title Professional Endorsement

This Endorsement Amends the Policy. Please read it Carefully.

| Named Insured | Policy Number | Endorsement Number | Effective Date |
|---|---|---|---|
| David J. Stern, P.A., Etal. | PL1 0524957 | 460490 (5-96) | 1/9/98 |

In consideration of the additional premium of $ __INCL._____, it is hereby understood and agreed that the following definitions and exclusions are added to the policy. The following shall also be considered as you under this policy

**Legal professional services shall also mean acting in your professional capacity as:**

(1) Title insurance agent, but only in the capacity when you are acting pursuant to a written agency agreement with a licensed title insurance company.

(2) Title abstracter, but only with respect to those services which involve the searching of title records and preparation of such memoranda, certificates issued in lieu of abstracts, note and references to chains of title, as well as name searches, tax and assessment searches. These services must be in written or printed form.

(3) Escrow agent, solely while acting pursuant to escrow instructions contained in a written escrow agreement accepted in writing by you.

(4) Conducting the closing of real property.

**Exclusions:** This policy does not apply to:

(1) Liability arising out of or contributed to by the inability to pay or collect any money whether such inability be on your part or otherwise;

(2) Any claim arising from defects in title not disclosed in public records or of which you had knowledge at the date of issuance of such title insurance;

(3) Any liability assumed by you under any contract or agreement whereby you agreed to participate in the payment of a loss, including attorneys fees, court costs and expenses payable under a title insurance policy;

(4) Any claim based upon or arising out of any intentional breach of underwriting authority by you in your capacity as a title insurance agent;

(5) Any claim based upon or arising out of any loan made by you, or the servicing of any loan by you.

All other terms and conditions of this policy remain unchanged.

_____
Signature of Authorized Company Representative

_1-29-98_
Date

460490 (5-96)

## FLORIDA CHANGES 

This endorsement modifies insurance provided under the LAWYERS PROFESSIONAL LIABILITY POLICY.

GENERAL CONDITION 15. Cancellation/Non-Renewal is replaced by the following:

a.  You may cancel this policy at any time. You must mail a written notice to us telling when you want the cancellation to be effective. We must receive the policy or written notice before the cancellation date. Delivery of a written notice is the same as mailing. If you cancel the policy, return premium shall be computed at .9 times your pro rata unearned premium.

b.  If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
    (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
    (2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
        (a)  A material misstatement or misrepresentation; or
        (b)  A failure to comply with the underwriting requirements established by us.

c.  If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:
    (1)  Nonpayment of premium;
    (2)  The policy was obtained by a material misstatement;
    (3)  Failure to comply with underwriting requirements within 90 days of the effective date of coverage;
    (4)  A substantial change in the risk covered by the policy; or
    (5)  The cancellation is for all insureds under such policies for a given class of insureds.

    If we cancel this policy for any of these reasons, we will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
    (a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
    (b)  45 days before the effective date of cancellation if we cancel for any of the other reasons stated in paragraph c.

d.  Notice of Cancellation will be sent to the Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. If we cancel, return premium shall be computed pro rata. We will make the premium adjustment with you at the time that cancellation is effective, or as soon as practicable after that time. However, this premium adjustment is not a condition of cancellation.

f.  If we decide not to renew this policy we will mail or deliver to the Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    If we are willing to renew this policy, we will mail or deliver to the Named Insured written notice of the renewal premium at least 45 days prior to the expiration of this policy.

    Any notice of nonrenewal or of renewal premium will be mailed or delivered to the Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    The quotation of different limits of liability, deductible or scope of coverage by us at renewal shall not be considered a non-renewal of this policy.

460938 (6-96)                                                           Page 1 of 2

# COMMERCIAL LINES
# POLICY

## LEGION
### INSURANCE COMPANY
A STOCK COMPANY
ONE LOGAN SQUARE
SUITE 1400
PHILADELPHIA, PA 19103

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS (WHERE APPLICABLE)
– ONE OR MORE COVERAGE PARTS.  A COVERAGE PART CONSISTS OF:
  • ONE OR MORE COVERAGE FORMS
  • APPLICABLE FORMS AND ENDORSEMENTS

# Lawyers Professional Liability Insurance

NOTICE: The coverage of this policy is limited to claims which are first made against you and reported to and received by us, in writing, during the policy period or during an extended reporting period issued by us. Claims must arise from wrongful acts which commence on or after the retroactive date specified in the Declarations. The limit of liability available to pay judgments or settlements will be first reduced by amounts incurred for claim expenses. You must read the entire policy carefully to determine rights, duties and what is covered and what is not covered.

CONTENTS PAGE

Page

Actions Against the Company ........................................................................................................................ 6

Application ................................................................................................................................................... 6

Arbitration ................................................................................................................................................... 6

Assignment ................................................................................................................................................... 6

Audit ............................................................................................................................................................ 7

Cancellations/Non-Renewal ........................................................................................................................ 7

Changes in this Policy ................................................................................................................................. 6

Changes in Your Firm's Personnel .............................................................................................................. 6

Claims - see Your Duties in the Event of a Claim ....................................................................................... 5

Deductible ................................................................................................................................................... 5

Definitions ................................................................................................................................................ 3-4

    Claim ................................................................................................................................................ 3

    Claim Expenses ................................................................................................................................ 3

    Extended Reporting Period ............................................................................................................. 3

    Legal Professional Services ............................................................................................................. 3

    Named Insured ................................................................................................................................. 4

    Policy Period ................................................................................................................................... 4

    Predecessor Firm ............................................................................................................................. 4

    Retroactive Date .............................................................................................................................. 4

    We, Us, Our .................................................................................................................................... 4

    Wrongful Act ................................................................................................................................... 4

    You, Yours ...................................................................................................................................... 4

Exclusions ................................................................................................................................................. 2-3

Extended Reporting Period ....................................................................................................................... 3,7

Insuring Agreements .................................................................................................................................... 2

Limits of Liability ........................................................................................................................................ 4

Multiple Policies .......................................................................................................................................... 5

Other Insurance ........................................................................................................................................... 6

Our Rights of Recovery ............................................................................................................................... 6

Policy Territory ............................................................................................................................................ 5

Reimbursement ............................................................................................................................................ 5

Sole Agent .................................................................................................................................................... 7

Your Duties in the Event of a Claim ............................................................................................................ 5

## LEGAL PROFESSIONAL LIABILITY
(Claims Made and Reported Basis)

Key words and phrases which appear in **bold** type have special meanings. Refer to Definitions found in this policy.

We are the insurance company named in the Declarations. In consideration of the payment of the premium we agree with **you** as follows:

### INSURING AGREEMENTS

1.  We will pay compensatory amounts for covered **claims** and claim expenses, up to our limit of liability, which **you** become legally obligated to pay as a result of a **wrongful act** in rendering or failing to render **legal professional services** by **you** or by anyone for whom **you** are legally liable.

2.  This policy applies only to **claims** first made against **you** and reported to **us**, in writing, during the **policy period** or an **extended reporting period**, provided that the **wrongful acts** on which the **claims** are based first occurred or commenced:
    A.  during the **policy period**; or
    B.  prior to the **policy period** but on or after the **retroactive date**, if any, provided that prior to the effective date of the **policy period**:
        1.  **you** were not aware that **your** conduct or lack of conduct constituted a **wrongful act**;   and
        2.  **you** did not give notice to any insurance company, including **us**, under a prior policy of potential **claim(s)** or of any **wrongful acts** which might result in a **claim(s)**.
        A **claim** is deemed made when written notice of such **claim** is reported to and received by **us**. It is a condition precedent to coverage under this policy that all **claims** be reported in compliance with Condition 6, Your Duties in the Event of a Claim.

3.  We have the right and duty to defend any **claim** covered by this policy, and we will:
    A.  defend even if any of the charges of the **claim** are groundless or false;
    B.  investigate any **claim** we feel appropriate:

4.  Our payment of the limit of liability ends all our duties to defend or settle a **claim**. We have the right to withdraw from defense of a **claim**. We can do this by tendering control of the defense to the **named insured** if:
    A.  the applicable limit of liability is exhausted prior to the conclusion of any **claim**; or
    B.  we deposit the applicable limit, less any amounts already paid for **claims** and **claim** expenses, in a court of competent jurisdiction.

5.  We have the right to choose and appoint defense counsel.

6.  We have no duty to defend or pay any **claims** not covered by this policy.

### EXCLUSIONS

We will not defend or pay, under this policy, for any:
1.  **claim** arising out of **legal professional services you** performed for any organization, corporation, company, partnership, or operation other than the **named insured** while any of **you** or **your** spouse(s) is or was an officer, director, trustee, partner, limited partner, manager, co-venturer, employee, or a more than 5% shareholder at the time the **wrongful act** giving rise to the **claim** took place;

2.  **claim** alleging violation of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of federal, state or local laws. This exclusion does not apply to the usual customary legal advice given in connection with such acts or laws;

3.    claim made by one or more f you against any other person or entity that was insured under this policy;

4.    claim arising our of discrimination, humiliation, harassment, or misconduct of any kind including, but not limited to, race, creed, color, age, sex, sexual preference, national origin, religion, handicap, or marital status;

5.    claim based upon or arising out of bodily injury, sickness, emotional distress, disease or death of any person, or injury to or destruction of any tangible property including loss of use of such property;

6.    claim arising out of loss, under any circumstances, due to pollution, nuclear contamination, nuclear reaction, or nuclear radiation regardless of cause;

7.    claim arising out of any dishonest, fraudulent, criminal or malicious acts or omissions including, but not limited to misappropriation, commingling, defalcation, or use of client funds or other property by you. This exclusion does not apply to any of you who:
    A.    did not personally participate in or acquiesce to any such act or omission and;
    B.    did not remain passive after having personal knowledge of any such act or omission;

8.    claim arising out of the certification or acknowledgment of a signature without the physical appearance before you of the person who claims to be the person signing the instrument.

9.    amounts which you must pay under any unemployment, or workers' compensation, disability benefits, or other similar law.

10.    claim for any punitive or exemplary damages, fines, sanctions, penalties, or any amount in addition to compensatory damages.

## DEFINITIONS
Wherever used in this policy:

Claim means a demand received by you for money, including the service of suit or institution of arbitration proceedings against you. It does not include money paid or owed to you as fees or expenses for legal professional services.

Claim expenses means:

    A.    fees, costs and expenses charged by any lawyer we designate;
    B.    all other fees, costs, interest and expenses resulting from the investigation, settlement, defense and appeal of a claim, if incurred by us, or with our written consent, by you;
    C.    premiums on bonds to release or prevent attachments for any amount not in excess of the applicable remaining limit of liability of this policy, and all premiums on appeal bonds required in any such defended suit, but without any obligation to us to apply for or furnish any such bonds.

However, claim expenses does not include salary charges of our regular employees, or officers.

Extended reporting period means the period of time after the end of the policy period for reporting claims arising out of wrongful acts committed prior to the end of the policy period and otherwise covered by this policy.

Legal professional services means:

    A.    services rendered to others in a lawyer-client capacity or as notary public;
    B.    services while acting in a fiduciary capacity with an attorney-client relationship as an administrator, conservator, trustee, executor, or guardian; however, not if you are a beneficiary or distributee of any trust or estate;
    C.    the rendering of title opinions limited to the sufficiency and quality of the title, and does not include the issuance of abstracts and/or binding or sale of title insurance;
    D.    the participating as a director or officer of a professional bar association;
    E.    services performed by you as an arbitrator or mediator.

Named insured means the person o        y named in the Declarations of this policy  ;  named insured.

Policy period means the period from the inception date of this policy to the policy expiration date set forth in the Declarations or its earlier termination date, if any.

Predecessor firm means any lawyer, law firm or professional legal corporation engaged in the practice of law, to whose financial assets and liabilities the named insured is the majority successor in interest, and listed on your application for this policy as a predecessor firm.

Retroactive date means the date specified in Item 4. of the Declarations.

We, us, our means the insurance company named in the Declarations.

Wrongful act means an actual or alleged negligent act, error or omission in rendering or failing to render legal professional services.

The following shall also be considered a wrongful act if allegations arise in connections with your rendering of legal professional services.

    A.    false arrest, detention, or imprisonment;
    B.    libel, slander, or other disparaging materials;
    C.    any writing or saying in violation of an individual's right to privacy;
    D.    malicious prosecution.

You and Yours means:

    A.    the person or entity in the Declarations of this policy as the named insured;
    B.    any predecessor firm;
    C.    any of the named insured's or predecessor firm's past or present partners, officers, directors, stockholders or employees, but only while acting within the scope of their duties for the named insured or predecessor firm;  .
    D.    any lawyer who was or is acting as "of counsel" and also is named in the application, but only while acting in a professional capacity on behalf of the named insured;
    E.    the legal representative of a person described in A,B,C, and D immediately above in the event of their incapacity, insolvency, bankruptcy or death, but only to the extent that they would be provided coverage under this policy.

## GENERAL CONDITIONS

1.    Limits of Liability
    All claim expenses shall be subtracted from the applicable limit of our liability. The remainder is the amount available to pay settlements or judgments.

    The limit of liability stated in the Declarations as "Each Claim" is the most we will pay for all claims and claim expenses that result from a single wrongful act or from a series of related wrongful acts. Two (2) or more claims arising out of single wrongful act or a series of related wrongful acts shall be treated as single claim. All such claims whenever made, shall be considered first made during the policy period or extended reporting period, if purchased, in which the earliest claim arising out of such wrongful act or related wrongful act was first made and all such claims shall be subject to the same limit of liability. The inclusion herein of more than one of you or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase our limit of liability.

    The limit of liability stated in the Declarations as "Policy Aggregate" is, subject to the above paragraph, the most we will pay for all claims reported to us during the policy period or extended reporting period and their resulting claim expenses.

2.   **Multiple Policies**

If this policy and any other policy providing coverage by us or any company affiliated with us apply to the same wrongful act or series of related wrongful acts, the aggregate maximum limit of liability under all policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by us or any affiliated company specifically to apply as excess insurance over this policy.

3.   **Deductible**

A.   Our obligation to pay as a result of a claim and to pay related claim expenses is in excess of the amount of the deductible. You shall pay all claims and claim expenses up to the amount of the deductible. The deductible amount is an annual aggregate.

B.   The deductible amount shall be payable by you as claim expenses are incurred or as payment for claims is made.

4.   **Reimbursement**

While we have no duty to do so, we may pay for claim expenses or settlements or judgments within the amount of the deductible or in excess of the limits of liability. If we make such payments, you are jointly and severally liable to repay such payments to us. Such amount shall, upon our written demand, be paid by you within thirty (30) days. Failure to pay such amount within thirty (30) days may result in cancellation of the policy.

5.   **Policy Territory**

This policy applies to **wrongful acts** which occur anywhere in the world; however, the **claim** must be made and suit brought against **you** in the United States of America, its territories or possessions or Canada.

6.   **Your Duties in the Event of a Claim**

A     When there is a **claim** or **you** think it is more likely than not there will be, **you** must as soon as practicable, but in no event later than ten (10) days after policy expiration, do the following:
     (1)   notify **us** in writing;
     (2)   specify the names and addresses of the parties involved. Provide **us** with information on the time, place and nature of the **wrongful act**;
     (3)   immediately forward all documents which **you** receive in connection with the **claim** to **us**.
     **You** must also:
     (4)   fully cooperate with **us** or our designee in the making of settlements, the conduct of suits or other proceedings, and enforcing any right of contribution or indemnity against another who may be liable to **you** because of injury, damage, loss or expense. **You** shall attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses;
     (5)   refuse, except at **your** own cost, to voluntarily make any payment, assume any obligation or incur any expense connected with a **claim**.

B.   When during the policy period, or any applicable extended reporting period, **you** first become aware that a **wrongful act** has occurred, arising out of **your legal professional services**, **you** must give **us** written notice of the following:
               (1)   the specific **wrongful act**;
               (2)   the injury or damage which has or may result from such **wrongful act**;
               (3)   the circumstances by which **you** first became aware of such **wrongful act** then any subsequent **claim** made against **you** arising out of such **wrongful act** shall be deemed to have been made during the policy period or extended reporting period. No coverage for such **claim** shall exist under any subsequent policy written by **us** or our affiliates.

7.   Our Rights of Recovery

A     If we make any payment, we are entitled to recover what we paid from other parties. Any person or entity to whom we make payment must transfer to us their rights of recovery against any other party. This person or entity must do everything necessary to secure these rights and must do nothing that would jeopardize them

B.    We will not exercise our right to recover against anyone insured by this policy unless the wrongful act was a willful violation of a statute, ordinance or regulation, or involved other intentional harm.

8.    **Actions Against the Company**

    A.    You may not bring any legal action against us concerning this policy until:
        (1)    you have fully complied with all the provisions of this policy; and
        (2)    the amount of your obligation to pay has been decided. Such amount can be set by judgment against you after actual trial or by written agreement between you, us and the claimant.

    B.    No person or organization has any right under this policy to include us in any action against you to determine your liability, nor will we be brought into such an action by you or your representative. If you or your estate becomes bankrupt or insolvent, it does not change any of our obligations under this policy.

9.    **Arbitration**

    We are entitled to exercise all your rights in the choice of arbitrators and in the conduct of any arbitration proceeding involving a claim covered by this policy.

10.    **Application**

    By acceptance of this policy, you agree that: (a) the statements in the application are your representations; (b) they shall be deemed material; (c) this policy is issued in reliance upon the truth of your representations; (d) this policy is void if your representations are false, (e) this policy embodies all agreements existing between you and us, or any of our agents, relating to this insurance.

11.    **Changes in your Firm's Personnel**

    Any change among your lawyers during the policy period must be reported to us, in writing, within thirty (30) days of such change, but no later then the expiration date of this policy. We have the right to amend this policy to change the definition of you or your or to change the premium.

12.    **Changes in this Policy**

    Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this policy. It also will not prevent us from asserting any rights under the provisions of this policy. None of the provisions of this policy will be waived, changed or modified except by written endorsement issued to form a part of this policy.

13.    **Assignment**

    You must first obtain our written consent to transfer or assign this policy.

14.    **Other Insurance**

    This insurance shall be excess of the amount of any other valid and collectible insurance available to you whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise. The only exception is other insurance written only as a specific excess insurance over the limits of liability provided in this policy.

15.    **Cancellation/Non-Renewal**

    You may cancel this policy at any time. You must mail a written notice to us telling when you want the cancellation to be effective. We must receive the policy or written notice before the cancellation date. Delivery of a written notice is the same as mailing. If you cancel the policy, return premium shall be computed at .9 times your pro rata unearned premium.

We can cancel this po▪▪    delivering or mailing a written notice to y▪▪    :is notice will be sent to the last
known address we have fu, you in our files. We will give you this notice at least thirty (30) days before the
effective date of cancellation, except if you have not paid a premium or deductible when due, we will only give
you ten (10) days notice of cancellation. The date and hour of cancellation will be shown in the notice. Return
premium shall be computed pro rata. We will make the premium adjustment with you at the time that
cancellation is effective, or as soon as practicable after that time. However, this premium adjustment is not a
condition of cancellation.

If we decide not to renew this policy, we will mail written notice to you at least thirty (30) days before the end of
the policy period. If you have not paid the premium, we are not required to give you notice on non-renewal.

The quotation of a different premium, limits of liability, deductible or scope of coverage by us at renewal shall not
be considered a non-renewal of this policy.

16.    Sole Agent

If there are more than one of you named in this policy, the first named person or entity in the Declarations shall
act for all of you. Notice of cancellation or non-renewal will only be sent to the first named person or entity and
will serve as a notice to all of you. Any premium refund will be sent to the first named person or entity.

17.    Extended Reporting Period

If this policy is terminated for any reason other than:
. A.    failure to pay premium, or
B.    failure to repay to us any deductible when due,

you have the right to purchase an extended reporting period for (a) 12 months, (b) 24 months or (c) 36 months
(as elected by the named insured) following immediately after the effective date of such termination. The
premium for the extended reporting period shall be (a) 100% for 12 months, (b) 150% for 24 months, (c) 185%
for 36 months, of the full annual premium for this policy.

In the event that you want to purchase this extended reporting period the named insured must:
A.    inform us in writing within thirty (30) days of the termination of this policy, that you want the
extension, and
B.    pay the premium to us promptly when due.

The fact that the period during which claims may be first made against you under this policy is extended by virtue
of the extended reporting period shall not in any way increase the limits of liability set forth in the Declarations.

18.    Audit

We may, but are not obligated to examine and audit your books and records at any time during the policy period
or extended reporting period and within three years after the final termination of this policy. This will only
concern matters related to this insurance.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

BY _____  
PRESIDENT

_____  
SECRETARY



# LEGION INSURANCE COMPANY

## DECLARATIONS
### LAWYERS PROFESSIONAL LIABILITY

Policy Number:       PL1-06⁵4864

### NOTICE: THIS IS A CLAIMS MADE POLICY.

THE COVERAGE OF THIS POLICY IS LIMITED TO CLAIMS WHICH ARE FIRST MADE AGAINST YOU
AND REPORTED TO AND RECEIVED BY US, IN WRITING, DURING THE POLICY PERIOD OR DURING
AN EXTENDED REPORTING PERIOD ISSUED BY US. CLAIMS MUST ARISE FROM WRONGFUL ACTS
WHICH COMMENCE ON OR AFTER THE RETROACTIVE DATE SPECIFIED IN THE DECLARATIONS.
THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS WILL BE FIRST
REDUCED BY AMOUNTS INCURRED FOR CLAIM EXPENSES. YOU MUST READ THE ENTIRE POLICY
CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS COVERED AND WHAT IS NOT
COVERED.

1. **NAMED INSURED: Law Offices of David J. Stern, P.A. & Professional Title & Abstract
   Company of Florida**

2. **ADDRESS OF NAMED INSURED:**       801 South University Drive
                                       Suite 500
                                       Plantation, FL 33324-

3. **POLICY PERIOD: FROM:**       01/09/1999       TO:       01/09/2000

4. **RETROACTIVE DATE:** 01/09/1994

5. **LIMITS OF LIABILITY:** (Inclusive of Claim Expenses as defined in this policy.)

   A. Each Claim                    $1,000,000

   B. Policy Aggregate              $3,000,000

6. **DEDUCTIBLE:** Applicable to all claims, inclusive of Claim Expenses as defined in
   this policy is                   $25,000

7. **PREMIUM:**                      $105,697.00

8. THIS DECLARATION ATTACHES TO AND BECOMES A PART OF THE   POLICY.
   THIS  DECLARATIONS  TOGETHER  WITH  THE  POLICY  FORM  AND  THE
   ENDORSEMENTS LISTED BELOW SHALL CONSTITUTE THE CONTRACT BETWEEN
   THE NAMED INSURED AND THE COMPANY.

   Endorsements.       460938 (6/96), 460490 (5/96)

9. NOTICES: All notices required to be given to the Company under this policy shall be
   addressed to.                Rigdon & Gioia
                                3063 Ogden Ave, Lisle IL 60532-1673

   _____                   _____
   Authorized Signature                            Date
   410950(5-96)

   **EXHIBIT "B"**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FLORIDA CHANGES

This endorsement modifies insurance provided under the LAWYERS PROFESSIONAL LIABILITY POLICY.

GENERAL CONDITION 15. Cancellation/Non-Renewal is replaced by the following:

a.  You may cancel this policy at any time. You must mail a written notice to us telling when you want the cancellation to be effective. We must receive the pol cy or written notice before the cancellation date. Delivery of a written notice is the same as mailing. If you cancel the policy, return premium shall be computed at .9 times your pro rata unearned premium.

b.  If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
    (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
    (2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
        (a) A material misstatement or misrepresentation; or
        (b) A failure to comply with the underwriting requirements established by us.

c.  If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:
    (1) Nonpayment of premium;
    (2) The policy was obtained by a material misstatement;
    (3) Failure to comply with underwriting requirements within 90 days of the effective date of coverage;
    (4) A substantial change in the risk covered by the policy; or
    (5) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
    (a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
    (b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in paragraph c.

d.  Notice of Cancellation will be sent to the Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. If we cancel, return premium shall be computed pro rata. We will make the premium adjustment with you at the time that cancellation is effective, or as soon as practicable after that time. However, this premium adjustment is not a condition of cancellation.

f.  If we decide not to renew this policy we will mail or deliver to the Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

If we are willing to renew this policy, we will mail or deliver to the Named Insured written notice of the renewal premium at least 45 days prior to the expiration of this policy.

Any notice of nonrenewal or of renewal premium will be mailed or delivered to the Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The quotation of different limits of liability, deductible or scope of coverage by us at renewal shall not be considered a non-renewal of this policy.

460938 (6-96)                                                                                      Page 1 of 2

g.   If we fail to provide the 45-day or 20-da.., notices required above, the coverage provided will remain in effect until 45 days after the notice is given or until the effective date of replacement coverage obtained by the Named Insured, whichever comes first. The premium will remain the same during ar y such extension period, except that, in the event of failure to provide notice of nonrenewal, if the rate filing in effect would have resulted in a premium reduction, the premium during such extension of coverage will be calculated based upon the later rate filing.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc.. 1992

(       ☾

## Title Professional Endorsement

·This Endorsement Amends the Policy. Please read it Carefully.

| Named Insured | Policy Number | Endorsement Number | Effective Date |
|---|---|---|---|
| David J. Stern, P.A. & Professional Title & Abstract Co. Of Florida | PLI-0654864 | 460490 (5-96) | 01/09/1999 |

In consideration of the additional premium of $ INCL., it is hereby understood and agreed that the following definitions and exclusions are added to the policy. The following shall also be considered as you under this policy
Professional Title & Abstract Co. Of Florida

Legal professional services shall also mean acting in your professional capacity as:

(1) Title insurance agent, but only in the capacity when you are acting pursuant to a written agency agreement with a licensed title insurance company.

(2) Title abstracter, but only with respect to those services which involve the searching of title records and preparation of such memoranda, certificates issued in lieu of abstracts, note and references to chains of title, as well as name searches, tax and assessment searches. These services must be in written or printed form.

(3) Escrow agent, solely while acting pursuant to escrow instructions contained in a written escrow agreement accepted in writing by you.

(4) Conducting the closing of real property.

Exclusions: This policy does not apply to:

(1) Liability arising out of or contributed to by the inability to pay or collect any money whether such inability be on your part or otherwise;

(2) Any claim arising from defects in title not disclosed in public records or of which you had knowledge at the date of issuance of such title insurance;

(3) Any liability assumed by you under any contract or agreement whereby you agreed to participate in the payment of a loss, including attorneys fees, court costs and expenses payable under a title insurance policy;

(4) Any claim based upon or arising out of any intentional breach of underwriting authority by you in your capacity as a title insurance agent;

(5) Any claim based upon or arising out of any loan made by you, or the servicing of any loan by you.

All other terms and conditions of this policy remain unchanged.

_____
Signature of Authorized Company Representative

_____
Date

460490 (5-96)

# COMMERCIAL LINES POLICY

# LEGION
## INSURANCE COMPANY

A STOCK COMPANY
ONE LOGAN SQUARE
SUITE 1400
PHILADELPHIA, PA 19103

THIS POLICY CONSISTS OF:

- DECLARATIONS
- COMMON POLICY CONDITIONS (WHERE APPLICABLE)
- ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
  - ONE OR MORE COVERAGE FORMS
  - APPLICABLE FORMS AND ENDORSEMENTS

650003 (7-96)

# Lawyers Professional · Liability Insurance

NOTICE: The coverage of this policy is limited to claims which are first made against you and reported to and received by us, in writing, during the policy period or during an extended reporting period issued by us. Claims must arise from wrongful acts which commence on or after the retroactive date specified in the Declarations. The limit of liability available to pay judgments or settlements will be first reduced by amounts incurred for claim expenses. You must read the entire policy carefully to determine rights, duties and what is covered and what is not covered.

## CONTENTS PAGE

                                                                                              Page

Actions Against the Company ........................................................................................ 6
Application ..................................................................................................................... 6
Arbitration ..................................................................................................................... 6
Assignment ..................................................................................................................... 6
Audit .............................................................................................................................. 7
Cancellations/Non-Renewal .......................................................................................... 7
Changes in this Policy .................................................................................................... 6
Changes in Your Firm's Personnel ............................................................................... 6
Claims – see Your Duties in the Event of a Claim ....................................................... 5
Deductible ...................................................................................................................... 5
Definitions .................................................................................................................. 3-4
    Claim ......................................................................................................................... 3
    Claim Expenses ....................................................................................................... 3
    Extended Reporting Period ...................................................................................... 3
    Legal Professional Services ..................................................................................... 3
    Named Insured ......................................................................................................... 4
    Policy Period ............................................................................................................ 4
    Predecessor Firm ..................................................................................................... 4
    Retroactive Date ...................................................................................................... 4
    We, Us, Our ............................................................................................................. 4
    Wrongful Act ........................................................................................................... 4
    You, Yours ............................................................................................................... 4
Exclusions .................................................................................................................. 2-3
Extended Reporting Period ........................................................................................ 3,7
Insuring Agreements ...................................................................................................... 2
Limits of Liability .......................................................................................................... 4
Multiple Policies ............................................................................................................ 5
Other Insurance .............................................................................................................. 6
Our Rights of Recovery .................................................................................................. 6
Policy Territory .............................................................................................................. 5
Reimbursement ............................................................................................................... 5
Sole Agent ...................................................................................................................... 7
Your Duties in the Event of a Claim ............................................................................. 5

 

### LEGAL PROFESSIONAL LIABILITY
(Claims Made and Reported Basis)

Key words and phrases which appear in bold type have special meanings. Refer to Definitions found in this policy.

We are the insurance company named in the Declarations. In consideration of the payment of the premium we agree with you as follows:

### INSURING AGREEMENTS

1. We will pay compensatory amounts for covered claims and claim expenses, up to our limit of liability, which you become legally obligated to pay as a result of a wrongful act in rendering or failing to render legal professional services by you or by anyone for whom you are legally liable.

2. This policy applies only to claims first made against you and reported to us, in writing, during the policy period or an extended reporting period, provided that the wrongful acts on which the claims are based first occurred or commenced:
   A. during the policy period; or
   B. prior to the policy period but on or after the retroactive date, if any, provided that prior to the effective date of the policy period:
      1. you were not aware that your conduct or lack of conduct constituted a wrongful act; and
      2. you did not give notice to any insurance company, including us, under a prior policy of potential claim(s) or of any wrongful acts which might result in a claim(s).
      . A claim is deemed made when written notice of such claim is reported to and received by us. It is a condition precedent to coverage under this policy that all claims be reported in compliance with Condition 6, Your Duties in the Event of a Claim.

3. We have the right and duty to defend any claim covered by this policy, and we will:
   A. defend even if any of the charges of the claim are groundless or false;
   B. investigate any claim we feel appropriate:

4. Our payment of the limit of liability ends all our duties to defend or settle a claim. We have the right to withdraw from defense of a claim. We can do this by tendering control of the defense to the named insured if:
   A. the applicable limit of liability is exhausted prior to the conclusion of any claim; or
   B. we deposit the applicable limit, less any amounts already paid for claims and claim expenses, in a court of competent jurisdiction.

5. We have the right to choose and appoint defense counsel.

6. We have no duty to defend or pay any claims not covered by this policy.

### EXCLUSIONS

We will not defend or pay, under this policy, for any:
1. claim arising out of legal professional services you performed for any organization, corporation, company, partnership, or operation other than the named insured while any of you or your spouse(s) is or was an officer, director, trustee, partner, limited partner, manager, co-venturer, employee, or a more than 5% shareholder at the time the wrongful act giving rise to the claim took place;

2. claim alleging violation of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of federal, state or local laws. This exclusion does not apply to the usual customary legal advice given in connection with such acts or laws;

3.  claim made by one or more of you against any other person or entity that is or was insured under this policy;

4.  claim arising out of discrimination, humiliation, harassment, or misconduct of any kind including, but not limited to, race, creed, color, age, sex, sexual preference, national origin, religion, handicap, or marital status;

5.  claim based upon or arising out of bodily injury, sickness, emotional distress, disease or death of any person, or injury to or destruction of any tangible property including loss of use of such property;

6.  claim arising out of loss, under any circumstances, due to pollution, nuclear contamination, nuclear reaction, or nuclear radiation regardless of cause;

7.  claim arising out of any dishonest, fraudulent, criminal or malicious acts or omissions including, but not limited to misappropriation, commingling, defalcation, or use of client funds or other property by you. This exclusion does not apply to any of you who:
    A.  did not personally participate in or acquiesce to any such act or omission and;
    B.  did not remain passive after having personal knowledge of any such act or omission;

8.  claim arising out of the certification or acknowledgment of a signature without the physical appearance before you of the person who claims to be the person signing the instrument. ·

9.  amounts which you must pay under any unemployment, or workers' compensation, disability benefits, or other similar law.

10.  claim for any punitive or exemplary damages, fines, sanctions, penalties, or any amount in addition to compensatory damages.

## DEFINITIONS
Wherever used in this policy:

**Claim** means a demand received by you for money, including the service of suit or institution of arbitration proceedings against you. It does not include money paid or owed to you as fees or expenses for legal professional services.

**Claim expenses means:**

    A.  fees, costs and expenses charged by any lawyer we designate;
    B.  all other fees, costs, interest and expenses resulting from the investigation, settlement, defense and appeal of a claim, if incurred by us, or with our written consent, by you;
    C.  premiums on bonds to release or prevent attachments for any amount not in excess of the applicable remaining limit of liability of this policy, and all premiums on appeal bonds required in any such defended suit, but without any obligation to us to apply for or furnish any such bonds.

However, claim expenses does not include salary charges of our regular employees, or officers.

**Extended reporting period** means the period of time after the end of the policy period for reporting claims arising out of wrongful acts committed prior to the end of the policy period and otherwise covered by this policy.

**Legal professional services means:**
    A.  services rendered to others in a lawyer-client capacity or as notary public;
    B.  services while acting in a fiduciary capacity with an attorney-client relationship as an administrator, conservator, trustee, executor, or guardian; however, not if you are a beneficiary or distributee of any trust or estate;
    C.  the rendering of title opinions limited to the sufficiency and quality of the title, and does not include the issuance of abstracts and/or binding or sale of title insurance;
    D.  the participating as a director or officer of a professional bar association;
    E.  services performed by you as an arbitrator or mediator.

Named insured means the person or entity named in the Declarations of this policy as the named insured.

Policy period means the period from the inception date of this policy to the policy expiration date set forth in the Declarations or its earlier termination date, if any.

Predecessor firm means any lawyer, law firm or professional legal corporation engaged in the practice of law, to whose financial assets and liabilities the named insured is the majority successor in interest, and listed on your application for this policy as a predecessor firm.

Retroactive date means the date specified in Item 4. of the Declarations.

We, us, our means the insurance company named in the Declarations.

Wrongful act means an actual or alleged negligent act, error or omission in rendering or failing to render legal professional services.

The following shall also be considered a wrongful act if allegations arise in connections with your rendering of legal professional services.

    A.    false arrest, detention, or imprisonment;
    B.    libel, slander, or other disparaging materials;
    C.    any writing or saying in violation of an individual's right to privacy;
    D.    malicious prosecution.

You and Yours means:

    A.    the person or entity in the Declarations of this policy as the named insured;
    B.    any predecessor firm;
    C.    any of the named insured's or predecessor firm's past or present partners, officers, directors, stockholders or employees, but only while acting within the scope of their duties for the named insured or predecessor firm;
    D.    any lawyer who was or is acting as "of counsel" and also is named in the application, but only while acting in a professional capacity on behalf of the named insured;
    E.    the legal representative of a person described in A,B,C, and D immediately above in the event of their incapacity, insolvency, bankruptcy or death, but only to the extent that they would be provided coverage under this policy.

## GENERAL CONDITIONS

1.    **Limits of Liability**

All claim expenses shall be subtracted from the applicable limit of our liability. The remainder is the amount available to pay settlements or judgments.

The limit of liability stated in the Declarations as "Each Claim" is the most we will pay for all claims and claim expenses that result from a single wrongful act or from a series of related wrongful acts. Two (2) or more claims arising out of single wrongful act or a series of related wrongful acts shall be treated as single claim. All such claims whenever made, shall be considered first made during the policy period or extended reporting period, if purchased, in which the earliest claim arising out of such wrongful act or related wrongful act was first made and all such claims shall be subject to the same limit of liability. The inclusion herein of more than one of you or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase our limit of liability.

The limit of liability stated in the Declarations as "Policy Aggregate" is, subject to the above paragraph, the most we will pay for all claims reported to us during the policy period or extended reporting period and their resulting claim expenses.

1

2.   **Multiple Policies**      

If this policy and any other policy providing coverage by us or any company affiliated with us apply to the same wrongful act or series of related wrongful acts, the aggregate maximum limit of liability under all policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by us or any affiliated company specifically to apply as excess insurance over this policy.

3.   **Deductible**

A.      Our obligation to pay as a result of a claim and to pay related claim expenses is in excess of the amount of the deductible. You shall pay all claims and claim expenses up to the amount of the deductible. The deductible amount is an annual aggregate.

B.      The deductible amount shall be payable by you as claim expenses are incurred or as payment for claims is made.

4.   **Reimbursement**

While we have no duty to do so, we may pay for claim expenses or settlements or judgments within the amount of the deductible or in excess of the limits of liability. If we make such payments, you are jointly and severally liable to repay such payments to us. Such amount shall, upon our written demand, be paid by you within thirty (30) days. Failure to pay such amount within thirty (30) days may result in cancellation of the policy.

5.   **Policy Territory**

This policy applies to wrongful acts which occur anywhere in the world; however, the claim must be made and suit brought against you in the United States of America, its territories or possessions or Canada.

6.   **Your Duties in the Event of a Claim**

A      When there is a claim or you think it is more likely than not there will be, you must as soon as practicable, but in no event later than ten (10) days after policy expiration, do the following:
(1)      notify us in writing;
(2)      specify the names and addresses of the parties involved. Provide us with information on the time, place and nature of the wrongful act;
(3)      immediately forward all documents which you receive in connection with the claim to us.
You must also:
(4)      fully cooperate with us or our designee in the making of settlements, the conduct of suits or other proceedings, and enforcing any right of contribution or indemnity against another who may be liable to you because of injury, damage, loss or expense. You shall attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses;
(5)      refuse, except at your own cost, to voluntarily make any payment, assume any obligation or incur any expense connected with a claim.

B.      When during the policy period, or any applicable extended reporting period, you first become aware that a wrongful act has occurred, arising out of your legal professional services, you must give us written notice of the following:
(1)      the specific wrongful act;
(2)      the injury or damage which has or may result from such wrongful act;
(3)      the circumstances by which you first became aware of such wrongful act then any subsequent claim made against you arising out of such wrongful act shall be deemed to have been made during the policy period or extended reporting period. No coverage for such claim shall exist under any subsequent policy written by us or our affiliates

7.   Our Rights of Recovery

A      If we make any payment, we are entitled to recover what we paid from other parties. Any person or entity to whom we make payment must transfer to us their rights of recovery against any other party. This person or entity must do everything necessary to secure these rights and must do nothing that would jeopardize them



B.   We will not exercise our right to recover against anyone insured by this policy unless the wrongful act was a willful violation of a statute, ordinance or regulation, or involved other intentional harm.

8.   **Actions Against the Company**

A.   You may not bring any legal action against us concerning this policy until:
    (1)   you have fully complied with all the provisions of this policy; and
    (2)   the amount of your obligation to pay has been decided. Such amount can be set by judgment against you after actual trial or by written agreement between you, us and the claimant.

B.   No person or organization has any right under this policy to include us in any action against you to determine your liability, nor will we be brought into such an action by you or your representative. If you or your estate becomes bankrupt or insolvent, it does not change any of our obligations under this policy.

9.   **Arbitration**

We are entitled to exercise all your rights in the choice of arbitrators and in the conduct of any arbitration proceeding involving a claim covered by this policy.

10.   **Application**

By acceptance of this policy, you agree that: (a) the statements in the application are your representations; (b) they shall be deemed material; (c) this policy is issued in reliance upon the truth of your representations; (d) this policy is void if your representations are false, (e) this policy embodies all agreements existing between you and us, or any of our agents, relating to this insurance.

11.   **Changes in your Firm's Personnel**

Any change among your lawyers during the policy period must be reported to us, in writing, within thirty (30) days of such change, but no later then the expiration date of this policy. We have the right to amend this policy to change the definition of you or your or to change the premium.

12.   **Changes in this Policy**

Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this policy. It also will not prevent us from asserting any rights under the provisions of this policy. None of the provisions of this policy will be waived, changed or modified except by written endorsement issued to form a part of this policy.

13.   **Assignment**

You must first obtain our written consent to transfer or assign this policy.

14.   **Other Insurance**

This insurance shall be excess of the amount of any other valid and collectible insurance available to you whether such other insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise. The only exception is other insurance written only as a specific excess insurance over the limits of liability provided in this policy.

15.   Cancellation/Non-Renewal

You may cancel this policy at any time. You must mail a written notice to us telling when you want the cancellation to be effective. We must receive the policy or written notice before the cancellation date. Delivery of a written notice is the same as mailing. If you cancel the policy, return premium shall be computed at .9 times your pro rata unearned premium.

We can cancel this policy by delivering or mailing a written notice to you. This notice will be sent to the last known address we have for you in our files. We will give you this notice at least thirty (30) days before the effective date of cancellation, except if you have not paid a premium or deductible when due, we will only give you ten (10) days notice of cancellation. The date and hour of cancellation will be shown in the notice. Return premium shall be computed pro rata. We will make the premium adjustment with you at the time that cancellation is effective, or as soon as practicable after that time. However, this premium adjustment is not a condition of cancellation.

If we decide not to renew this policy, we will mail written notice to you at least thirty (30) days before the end of the policy period. If you have not paid the premium, we are not required to give you notice on non-renewal.

The quotation of a different premium, limits of liability, deductible or scope of coverage by us at renewal shall not be considered a non-renewal of this policy.

16. **Sole Agent**

If there are more than one of you named in this policy, the first named person or entity in the Declarations shall act for all of you. Notice of cancellation or non-renewal will only be sent to the first named person or entity and will serve as a notice to all of you. Any premium refund will be sent to the first named person or entity.

17. **Extended Reporting Period**

If this policy is terminated for any reason other than:
A. failure to pay premium, or
B. failure to repay to us any deductible when due,

you have the right to purchase an extended reporting period for (a) 12 months, (b) 24 months or (c) 36 months (as elected by the named insured) following immediately after the effective date of such termination. The premium for the extended reporting period shall be (a) 100% for 12 months, (b) 150% for 24 months, (c) 185% for 36 months, of the full annual premium for this policy.

In the event that you want to purchase this extended reporting period the named insured must:
A. inform us in writing within thirty (30) days of the termination of this policy, that you want the extension, and
B. pay the premium to us promptly when due.

The fact that the period during which claims may be first made against you under this policy is extended by virtue of the extended reporting period shall not in any way increase the limits of liability set forth in the Declarations.

18. **Audit**

We may, but are not obligated to examine and audit your books and records at any time during the policy period or extended reporting period and within three years after the final termination of this policy. This will only concern matters related to this insurance.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

BY _____
                PRESIDENT

_____
                SECRETARY

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA

THEODORA BRYANT,
MARY L. WALKER, and
EARNEST JACK WELCH,
individually and on behalf
of all others similarly
situated,

      Plaintiffs,

CASE NO. 98- CV98- 5938

vs.

CLASS REPRESENTATION

LAW OFFICES OF DAVID J. STERN, P.A,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, THEORDORA BRYANT, MARY L.WALKER, and EARNEST JACK

WELCH, individually and on behalf of all others similarly situated (collectively referred to as

"Plaintiffs"), sue the Defendant, LAW OFFICES OF DAVID J. STERN, P.A. (hereinafter

"Stern"), and allege:

### JURISDICTION

1. This is an action for damages in excess of the jurisdictional limits of the Court for violation

of the Florida Consumer Collection Practices Act, as set forth in §559.77, Florida Statutes.

2. Stern is a Florida corporation and operates business in the state of Florida as a law firm. The

law firm's primary business is collecting debts on behalf of residential mortgage lenders through

foreclosure actions which are filed throughout the State of Florida.

**EXHIBIT "C"**

## VENUE

3.      Venue is proper in Leon County, Florida, as the violations complained of by the named Plaintiffs occurred in Leon County when Stern filed foreclosure actions against the Plaintiffs and sought to collect costs to which it was not entitled.

## CLASS ALLEGATIONS

4.      Plaintiffs bring this action on behalf of themselves and as representatives of a class pursuant to the provisions of Rule 1.220, Florida Rules of Civil Procedure. The proposed class Plaintiffs seek to represent consists of all persons from whom Stern has filed foreclosure actions and claimed, attempted or threatened to collect costs in the collection of a "consumer debt" as that term is defined in Section 559.55(1), F.S., which were in excess of the amount allowed by law.

5.      The persons from whom Stern has claimed, attempted, or threatened to collect costs in excess of the amount allowed by law constitute a class so numerous that joinder of all members is impractical. It is estimated that the number of class members is in excess of 1,500 persons.

6.      There are questions of law and fact common to all members of the class: specifically, as to both the named and class Plaintiffs, whether Stern may, under Florida law, claim, attempt, or threaten to collect costs in the prosecution of a mortgage foreclosure action which are in excess of the actual out of pocket amounts expended by Stern.

7.      Plaintiffs' claims are typical of the claims of the class inasmuch as they were Defendants in a foreclosure action prosecuted by Stern on behalf of the lender Stern represented, seeking to collect a consumer debt. During the course of the litigation, Stern claimed, attempted or threatened to collect costs which exceeded the actual out-of-pocket amount expended by Stern. Plaintiffs will fairly and adequately represent the interests of the class.

2

8.    Stern's actions are generally applicable to all members of the class.  Common questions of law and fact dominate over any questions affecting only individual members of the class.  A class action is superior to other available methods for the efficient adjudication of this controversy.  Accordingly, this action is maintainable pursuant to Rule 1.220, Florida Rules of Civil Procedure.

## FACTS RELATIVE TO PLAINTIFF THEODORA BRYANT

9.  On or about August 22, 1997, Stern, as attorney for Federal National Mortgage Association., filed a foreclosure action against Viola M. Woody seeking to foreclose her homestead in Leon County Circuit Court, Case Number 97-4725.  Viola Woody died on March 13, 1997.  Plaintiff Theodora Bryant is Viola Woody's granddaughter.  Plaintiff Theodora Bryant inherited the homestead of Viola Woody which Stern sought to foreclose. Plaintiff Theodora Bryant took title to the home on January 20, 1998 through a judicial proceeding determining the homestead of Viola M. Woody, deceased.  Plaintiff Theodora Bryant lived in the home and used it for her personal use.

10.    The obligations for which foreclosure proceedings were brought against Plaintiff Theordora Bryant was a consumer debt within the meaning of §559.55(1), Florida Statutes.

11.    During the foreclosure action, Stern claimed, attempted, or threatened to collect a debt which was not legitimate or asserted the existence of some other legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

12.    Stern claimed, attempted, or threatened to collect costs which were in excess of the amount allowed by law. Stern, through its captive corporation, Professional Title and Abstract Company of Florida, Inc. ("Professional Title"), claimed, attempted or threatened to collect more

3

for title abstracting cost than the out of pocket costs actually incurred by Stern and its corporation, Professional Title.

13.     In the foreclosure litigation, Stern claimed that it incurred total title abstracting costs of $400 (see the correspondence of Stern dated January 9, 1998 attached as Exhibit "A"). Stern submitted the invoice attached as Exhibit "B" to substantiate the alleged "title search/exam" costs to Plaintiff's legal counsel.   The actual out-of-pocket cost to Stern and its captive corporation for title abstracting was less than $100.

14.     Professional Title is a Florida corporation which was organized and incorporated by David J. Stern, the sole shareholder, officer and director of Stern. Professional Title operates its business from the same location, utilizing the same telephone number as Stern. Professional Title has no existence other than to Stern for the purpose of inflating title abstracting costs (Professional Title is not even listed in the telephone directory in Ft. Lauderdale). Professional Title purchases title abstracts from third party vendors, usually Attorney's Title Insurance Company, then marks up its costs and sells it to Stern. Stern then either collects the inflated costs from the debtors it is collecting upon or from its client, the lender of the debtor.

## FACTS RELATIVE TO PLAINTIFF MARY L. WALKER

15. On or about October 3, 1997, Stern, as attorney for Federal National Mortgage Association, filed a foreclosure action against Plaintiff Mary L. Walker in Leon County Circuit Court, Case Number 97-5700.

16.     The obligations for which foreclosure proceedings were brought against Plaintiff Mary L. Walker was a consumer debt within the meaning of §559.55(1), Florida Statutes.

4

17.     During the foreclosure action, Stern claimed, attempted, or threatened to collect a debt which was not legitimate or asserted the existence of some other legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

18.     Stern claimed, attempted, or threatened to collect costs which were in excess of the amount allowed by law. Stern claimed, attempted or threatened to collect more for the cost of title search expenses than the out of pocket costs incurred by Stern.

19.     In the foreclosure litigation, Stern claimed that it incurred a cost of $325 for "Abstracting" (see the affidavit of costs filed by Stern attached as Exhibit "C"). The actual cost to Stern or to its captive corporation, Professional Title, for the title abstract was substantially less than $325.

## FACTS RELATIVE TO
## DEFENDANT EARNEST JACK WELCH

20.     On or about April 8, 1998, Stern, as attorney Countrywide Homes Loans, Inc., filed a foreclosure action against Plaintiff Earnest Jack Welch in Leon County Circuit Court, Case Number 98-1896.

21.     The obligation for which foreclosure proceedings were brought against Plaintiff Earnest Jack Welch was a consumer debt within the meaning of §559.55(1), Florida Statutes.

22.     During the foreclosure action, Stern claimed, attempted, or threatened to collect a debt which was not legitimate or asserted the existence of some other legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

23.     Stern claimed, attempted, or threatened to collect costs which were in excess of the amount allowed by law. Stern claimed, attempted or threatened to collect more for the cost of title search expenses than the out of pocket costs incurred by Stern.

24.    In the foreclosure litigation, Stern claimed that it incurred a cost of $325 for "Abstracting" (see the affidavit of costs filed by Stern attached as Exhibit "D"). The actual cost to Stern or to its captive corporation, Professional Title, for the title abstract was substantially less than $325.

## NOTICE OF INTENT TO MAKE FUTURE
## CLAIM FOR PUNITIVE DAMAGES

25.    Plaintiffs give notice of their intent to seek punitive damages against Defendant Stern, pursuant to §559.77, Florida Statutes, inasmuch as Defendant Stern routinely claims, attempts, or threatens to collect from Plaintiffs and those they seek to represent, who are consumer debtors, amounts which are not legally due and violate of Florida law.

## CLAIM FOR STATUTORY ATTORNEY FEES

26.    Plaintiffs have retained the undersigned attorneys and are obligated to pay them a reasonable fee for their services.

## DEMAND FOR JURY TRIAL

27.    Plaintiffs demand trial by jury.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs demand the following relief:

    a.    That the Court certify the matter as a class action pursuant to the provisions of Rule 1.220, Florida Rules of Civil Procedure.

    b.    That Plaintiffs be awarded damages as set forth in §559.77, Florida Statutes.

    c.    That Plaintiffs be awarded a reasonable attorneys fee as set forth in §559.77, Florida Statutes.

d.   That Plaintiffs be awarded costs and such further relief as this Court

deems just and proper.

Dated this $\underline{26^{th}}$ day of October, 1998.

CLAUDE R. WALKER
Florida Bar I.D. #0384641
Huey, Guilday & Tucker, P.A.
P.O. Box 1794
Tallahassee, FL 32302
Ph: (850) 224-7091
Fax: (850) 222-2593

and

KELLY OVERSTREET JOHNSON, P.A.
Fla. Bar I.D.# 0354163
Broad and Cassel
P.O. Drawer 11300
Tallahassee, FL 32302
Ph. (850) 681-6810
Fax (850) 681-9792

Attorneys for Plaintiffs

7

# Law Offices of David J. Stern, P.A.

David J. Stern
Managing Attorney

Associate Attorneys
Miriam L. Mendieta
Samuel Hy Silverglate
Michelle H. Rosa
Dianne S. Tronolone
Theodore Aris Topouzis
Stephen L. Mack
Forrest G. McSurdy
Laura C. Tapia
William J. Cardner
David Bakalar
Mahalie A. Gay
Charles D. Nostra
Zoe Krikorian
Patrick J. Casey
Donna S. Glick
Neha Baumann

801 S. University Drive Suite 500
Plantation, FL 33324

Primary Phone (954)233-8000
Auto Attendant (954)233-8400
Primary/Foreclosure Fax (954)233-8333

Internet E-Mail dstern@dstern.com

Associate Attorneys
C. Diane Deanis
Fazis S. Cersbie
Deana Evertz
Beverly A. McComas
Scott B. Ramo
Maria M. Solomon
Robert A. Arabian
Doris Bermudez -Goodrich
Steven Weiner
Gregg R. Dreilinger
Mary Elizabeth Diaz
Jose Manuel Sanchez
Charles J. Courshon*
*Of Counsel

December 9, 1998

**Via Federal Express**
Legion Insurance Company
c/o Rigdon, Powers & Gioia ·
3033 Ogden Ave., Ste. 300
Lisle, IL 60532-1673

> **Re: Notice of Claim by David J. Stern, P.A.**
> **Policy No: LPL-1674574**

Dear Sir/Madam:

This letter is to notify you of a claim under the above-referenced policy. Enclosed with this letter is a Complaint and Demand for Jury Trial filed against our firm for claimed violation of the Florida Consumer Collection Practices Act, F.S. §559.77. Also enclosed is a copy of the Motion for Extension of Time to Respond to the Complaint requesting an additional 30 days from December 9, 1998 to file a response.

As soon as possible, please acknowledge receipt of this Notice of Incident and Claim and advise the name, address and phone number of counsel you will be engaging to defend us in this action. Two other foreclosure firms in Florida have been sued by the same attorneys who brought the suit against our firm and those firms have engaged attorney Barbara Sinsley to coordinate efforts and pool resources to defend the class actions filed. Barbara Sinsley is employed by Harris, Barrett, Mann & Dew, 1715 N. Westshore Boulevard, Suite 750, Tampa, Florida 33607 and her telephone is (813) 287-0550. Finally, the Supplemental Claim Information form further detailing the incident is attached hereto. Thank you for your assistance.

Sincerely,

DAVID J STERN

FGM:ac/97-11980.L21
Enc.

**EXHIBIT "D"**

## LEGION INSURANCE COMPANY

### CLAIM OR CLAIM CIRCUMSTANCE SUPPLEMENT

Complete one of these supplements for each Claim or Circumstance that might reasonably result in a Claim against you.

**Name of Firm:** DAVID J. STERN, P.A.

**Individuals of firm involved in Claim:** NO SPECIFIC ATTORNEYS ARE NAMED.

**Full Name(s) of Claimant(s):** THEODORA BRYANT, MARY L. WALKER & ERNEST JACK WELCH

**Additional Defendant(s):** NONE

**Date of Alleged Error:** VARIOUS DATES ALLEGED IN COMPLAINT

**Date First Made Known to You:** 11/19/98

**Date Reported to Insurance Company (if reported):** N/A

**Area of Practice from which Circumstance emanates (see Areas of Practice):** FORECLOSURE

Present status of Claim: ◯ Open ◯ Closed Currently in Suit (x)

| | | Less-Damage Paid | Expense Cost/Fees |
|---|---|---|---|
| Amt. asked in Summons/Complaint: | | | |
| Claimants Settlement Demand: | Amt. Paid by Insurer: | | |
| Defendants Settlement Offer: | Amt. Paid by Your Firm: | | |
| Insurers Loss Reserve: | | | |
| Insurers Expense Reserve: | Conclusion of Claim: | Court Judgment ( ) | Settlement ( ) |

Irrespective of the validity of the pending Claim, what is the amount you professionally adjudge will be awarded against you if such is tried in court?

**Allegation upon which claimant bases Claim:**

VIOLATIONS OF FLORIDA CONSUMER COLLECTION PRACTICES ACT F.S. SECTION 559.77

**Description of case and events:**

THE ATTORNEYS REPRESENTING THE PLAINTIFFS CLAIM THE TITLE SEARCH AND EXAM FEES CHARGED BY OUR FIRM VIOLATE F.S. SECTION 559.77

**What measures have been taken to avoid Claims in the future?**

NONE. WE DO NOT BELIEVE THE SUIT HAS ANY MERIT.

The undersigned being authorized by Applicant understands and agrees that the information contained herein becomes part of Applicant's Professional Liability Application and is subject to the same representations and conditions.

| Signature of Owner, Officer or Partner of the Firm DAVID J. STERN | Title PRESIDENT | Date 12-9-98 |
|---|---|---|

DOCS\LAWYERS\LEGION\FILED\80028.DOC
12/98

Mark S. Dym
George W. Gessler
John K. Hughes *
Peter M. Katsarus
Kimberley Marsh
Alex W. Miller
Terence J. Moran
Matthew J. Piers
David J. Pritchard
Kalman D. Resnick
Frederick S. Rhine
Jonathan A. Rothstein
Michael P. Simkus
Donna Kaner Socol

Of Counsel:
Darius S. Francescatti, M.D.
Susan R. Grath

ATTORNEYS AT LAW
Three First National Plaza
70 West Madison Street
Suite 2200
Chicago, Illinois 60602-4205
(312) 580-0100
Fax: (312) 580-1994

Benjamin P. Beringer
Gary N. Chodorow o
Anjali Dayal
Ruth M. Dunning
S. Todd Neal o
Mark A. Pellegrino *
Steven C. Steinback ‡ §
Dana H. Sukenik
J. Eric Vander Arend
Mark B. Weiner
Charles H. Wintersteen

o  Also admitted in California
‡  Also admitted in Michigan
§  Also admitted in Washington. D.C.
*  Also admitted in Wisconsin

December 15, 1998

## CERTIFIED MAIL

## PERSONAL AND CONFIDENTIAL

David Stern, Esq.
Law Offices of David Stern
801 South University Drive, Suite 500
Plantation, Florida  33324

    Re:  Claim of Theodora Bryant, et al.
         Insured:  Law Offices of David Stern, P.A.
         Legion Policy No. PL1-0524957
         Effective Dates:  1/9/98 - 1/9/99
         Date of Claim:  12/10/98
         Limits:  $500,000/$1,500,000
         Deductible:  $10,000
         Retro Date:  1/1/94
         Claim No. 2-151

Dear Mr. Stern:

    We are national counsel for Legion's Lawyer's Program and
acknowledge receipt of the captioned claim.  Your defense has been
assigned to Richard B. Bush, Esq., Bush Law Group, 56 East Pine
Street, Suite 300, Orlando, Florida 32801, (850) 386-7666.  If Mr.
Bush has not contacted you in a few days, please let me know.

    Please note your policy has a $10,000 deductible and you will
be responsible for the first $10,000 of defense costs.  Mr. Bush
will send his invoices to us.  We will advise you of the amount you
owe and ask that you send to us a check payable to "Legion
Insurance".  Please do so in a timely fashion.

    Your policy has a per claim limit of $500,000 and Legion
cannot be responsible for any judgment in excess of the available
limit.   Defense costs incurred by Legion are deducted from the
$500,000 limit and the remainder is the available limit.

    Given your per claim limit and that this is a class action,
please be conscious of the possibility of personal exposure over

**GESSLER, HUGHES & SOCOL, LTD.**

David Stern, Esq.
December 15, 1998
Page 2


and above the limit of your insurance policy.

    Also, your retro date is 1/1/94. Legion reserves its right to
decline any indemnity payment for any damages arising from conduct
occurring before January 1, 1994.

    If you have any questions at any time, please feel free to
contact either myself or Mike Simkus at 800/346-6842.

                Very truly yours,

                John K. Hughes

JKH:jkm
cc: Richard B. Bush, Esq.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THEODORA BRYANT, MARY L. WALKER,
EARNEST JACK WELCH, and BARBARA JEAN
SLOCUM, individually and on behalf of all others
similarly situated,

          Plaintiffs,                      CASE NO. 4:99CV317-RH
                                        CLASS REPRESENTATION

vs.

LAW OFFICES OF DAVID J. STERN, P.A.,

          Defendants.

---

### SECOND AMENDED COMPLAINT
### AND DEMAND FOR JURY TRIAL

Plaintiffs, THEODORA BRYANT, MARY L. WALKER, EARNEST JACK

WELCH and BARBARA JEAN SLOCUM, individually and on behalf of all others

similarly situated (collectively referred to as "Plaintiffs"), sue the Defendants, LAW

OFFICES OF DAVID J. STERN, P.A. (hereinafter "the Law Firm") and DAVID J.

STERN (hereinafter "Stern"), and allege:



EXHIBIT "F"

## COUNT I
## Cause of Action Pursuant to
## Section 559.77, Florida Statutes

### JURISDICTION AND DEFENDANT PARTIES

1.      This is an action for damages in excess of the jurisdictional limits of the Court for violation of the Florida Consumer Collection Practices Act (FCCPA), as set forth in section 559.77, Florida Statutes.

2.      The Law Firm is a Florida corporation and operates business in the state of Florida as a law firm. The Law Firm's primary business is collecting debts on behalf of residential mortgage lenders through foreclosure actions which are filed and processed throughout the State of Florida.

3.      Stern is the sole shareholder, director and officer of the Law Firm. He makes all decisions regarding procedures and policies for the Law Firm. He is aware, or should be aware, of all actions of the Firm which are referred to in this complaint. He further personally approves all pleading forms that are utilized by attorneys employed by the Law Firm in prosecuting foreclosure actions.

### VENUE

4.      Venue is proper in Leon County, Florida, as the violations complained of by the named Plaintiffs occurred in Leon County. The Law Firm and Stern filed foreclosure actions against the Plaintiffs in Leon County and have sought to collect

-2-

attorney fees and costs to which they were not entitled by various procedures, all of which occurred in Leon County.

## CLASS ALLEGATIONS

5.    Plaintiffs bring this action on behalf of themselves and as representatives of a class pursuant to the provisions of Fed. R. Civ. P. 23. The proposed class Plaintiffs seek to represent consists of all persons from whom the Law Firm and Stern have filed foreclosure actions and claimed, attempted or threatened to collect costs, fees, and other amounts in the collection of a "consumer debt", as that term is defined in 559.55(1), Florida Statutes, which were in excess of the amount allowed by law.

6.    The persons from whom the Law Firm and Stern have claimed, attempted, or threatened to collect attorney fees, costs, and other amounts in excess of the amount allowed by law constitute a class so numerous that joinder of all members is impractical. It is estimated that the number of class members is in excess of 1,500 persons.

7.    There are questions of law and fact common to all members of the class: specifically, as to both the named and class Plaintiffs, whether the Law Firm and Stern may, under Florida law, claim, attempt, or threaten to collect costs in the prosecution of a mortgage foreclosure action which are in excess of the actual out of pocket amounts expended by Defendants; and the issue of whether attempts by the

-3-

Law Firm and Stern to collect attorney fees in excess of the amount allowable by law is a violation of the FCCPA.

8.      Plaintiffs' claims are typical of the claims of the class inasmuch as they were defendants in foreclosure actions which were routinely prosecuted by the Law Firm and Stern on behalf of the lender the Law Firm and Stern represented, seeking to collect a consumer debt. The foreclosure proceedings and collection procedures utilized by the Defendants were standard procedures used in all of their foreclosure and collection proceedings. During the course of the litigation, the Law Firm and Stern claimed, attempted or threatened to collect costs which exceeded the actual out-of-pocket amount expended by the Law Firm and Stern. In some cases, the Law Firm and Stern attempted to collect attorney fees in excess of the amount allowable by law. These actions were also standard and routine practices of the Defendants.

9.      Plaintiffs will fairly and adequately represent the interests of the class. Plaintiffs' injuries and damages are similar to all of the class members.

10.     It is not practical to bring individual actions because the amount of individual loss is modest and the cost of prosecuting each individual action is substantial and the prosecution of individual actions would consume inordinate judicial resources.

11.     The Law Firm's and Stern's actions are generally applicable to all members of the class. Common questions of law and fact dominate over any questions

-4-

affecting only individual members of the class.  A class action is superior to other available methods for the efficient adjudication of this controversy. Accordingly, this action is maintainable pursuant to Fed. R. Civ. P. 23.

## FACTS RELATIVE TO PLAINTIFF THEODORA BRYANT

12.    On or about August 22, 1997, the Law Firm, as attorney for Federal National Mortgage Association, filed a foreclosure action against Viola M. Woody seeking to foreclose her homestead in Leon County Circuit Court, Case Number 97-4725. Viola Woody died on March 13, 1997. Plaintiff Theodora Bryant is Viola Woody's granddaughter. Plaintiff Theodora Bryant inherited the homestead of Viola Woody which the Law Firm and Stern sought to foreclose.    Plaintiff Theodora Bryant took title to the home on January 20, 1998 through a judicial proceeding determining the homestead of Viola M. Woody, deceased. Plaintiff Theodora Bryant lived in the home and used it for her personal use.

13.    The obligations for which foreclosure proceedings were brought against Plaintiff Theodora Bryant was a "consumer debt" within the meaning of §559.55(1), Florida Statutes.

14.    During the foreclosure action, the Law Firm and Stern claimed, attempted, or threatened to collect a debt which was not legitimate or asserted the existence of some other legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

-5-

15.     The Law Firm and Stern claimed, attempted, or threatened to collect costs which were in excess of the amount allowed by law. The Law Firm and Stern claimed, attempted or threatened to collect more for title abstracting cost than the out of pocket costs actually incurred by the Law Firm.

16.     In the foreclosure litigation, the Law Firm and Stern claimed that it incurred total title abstracting costs of $400 (see the correspondence of the Law Firm dated January 9, 1998 attached as Exhibit "A"). The Law Firm and Stern submitted the Professional Title and Abstract Company of Florida, Inc. ("Professional Title") invoice attached as Exhibit "B" to substantiate the alleged "title search/exam" costs to Plaintiff's legal counsel. It has subsequently been learned that the invoice was false and fraudulent. The actual out-of-pocket cost to the Law Firm and Stern was $110.

17.     Professional Title is a Florida corporation which was organized and incorporated by Stern. Stern is the sole shareholder, officer and director. The invoices of Professional Title disclose that its address is the same as the Law Firm and that its telephone number is the same as the Law Firm. Professional Title has no employees and has conducted no operations since January 1996. Stern instructed his employees to provide **false** invoices on Professional Title letterhead for abstracting costs to mortgagors and their attorneys if they requested invoices for the abstracting. In reality, Professional Title provided no abstracting, title search or title examination services to the Law Firm and no money changed hands between the Law Firm and

Professional Title. The purpose of these invoices is to deceive mortgagors and their attorneys as to the false amounts which the Law Firm and Stern were collecting or were attempting to collect in the foreclosure proceeding.

## FACTS RELATIVE TO PLAINTIFF MARY L. WALKER

18.    On or about October 3, 1997, the Law Firm, as attorney for Federal National Mortgage Association, filed a foreclosure action against Plaintiff Mary L. Walker in Leon County Circuit Court, Case Number 97-5700.

19.    The obligations for which foreclosure proceedings were brought against Plaintiff Mary L. Walker were "consumer debt" within the meaning of §559.55(1), Florida Statutes.

20.    During the foreclosure action, the Law Firm and Stern claimed, attempted, or threatened to collect debts which were not legitimate or asserted the existence of some other legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

21.    The amounts which the Law Firm and Stern claimed, attempted, or threatened to collect costs which were in excess of the amount allowed by law. The amounts which were claimed, attempted or for which collection was threatened included title search and examination costs which were not incurred, title update costs which were not incurred, and service of process expenses which were excessive and/or not incurred.

-7-

22.     In the foreclosure litigation, the Law Firm and Stern attempted to collect from Plaintiff Walker $400 for the cost of a title search/title exam and title update. (See the letter from the Law Firm and Stern to Plaintiff Walker's attorney, Marc Taps, as Exhibit "C").   The actual cost to the Law Firm and Stern for the title search, title exam and title update was $110.

### FACTS RELATIVE TO
### DEFENDANT EARNEST JACK WELCH

23.     On or about April 8, 1998, the Law Firm, as attorney Countrywide Homes Loans, Inc., filed a foreclosure action against Plaintiff Earnest Jack Welch in Leon County Circuit Court, Case Number 98-1896.

24.     The obligation for which foreclosure proceedings were brought against Plaintiff Welch was a "consumer debt" within the meaning of §559.55(1), Florida Statutes.

25.     During the foreclosure action, the Law Firm and Stern claimed, attempted, or threatened to collect a debt which was not legitimate or asserted the existence of a legal right with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

26.     The Law Firm and Stern claimed, attempted, or threatened to collect costs and attorney fees which were in excess of the amount allowed by law.

-8-

27.     In the foreclosure litigation, the Law Firm and Stern claimed that it incurred a cost of $75 for a "Title Update", attorney fees of $1,000 and costs of postage/copies/faxes of $60. (See the letter dated April 20, 1998, from the Law Firm and Stern attached as Exhibit "D"). The Law Firm and Stern sought to collect these amounts as incurred costs from Plaintiff, Welch. At the time the letter was sent to Plaintiff Welch, the Law Firm had not incurred a cost for a Title Update, had not incurred $1,000 in attorney fees, and had not incurred $60 in cost for postage/copies/faxes.

## FACTS RELATIVE TO DEFENDANT,
## BARBARA JEAN SLOCUM

28.     On or about July 16, 1998, the Law Firm, as attorney for Mellon Mortgage Company, filed a foreclosure action against Plaintiff Barbara Jean Slocum in Leon County Circuit Court, Case Number 98-3952.

29.     The obligation for which foreclosure proceedings were brought against Plaintiff Slocum was a "consumer debt" within the meaning of §559.55(1), Florida Statutes.

30.     During the foreclosure action, the Law Firm and Stern claimed, attempted, or threatened to collect debts which was not legitimate or asserted the existence of some legal rights with knowledge that the right did not exist, in violation of §559.72(9), Florida Statutes.

-9-

31.     The Law Firm and Stern claimed, attempted, or threatened to collect costs and attorney fees which were in excess of the amount allowed by law. The Law Firm and Stern claimed, attempted or threatened to collect amounts in excess of the actual costs incurred for title search expenses and for postage/copies/faxes by the Law Firm and Stern. The Law Firm and Stern also claimed, attempted or threatened to collect more for attorney fees than the amount it had agreed to be paid by its client.

32.     In the foreclosure litigation, the Law Firm and Stern claimed that it incurred a cost of $325 for "Title Search/Exam". The Law Firm and Stern submitted as evidence that it had incurred this cost by way of an invoice from Professional Title submitted to Plaintiff, Slocum. This invoice was false. The Law Firm and Stern also claimed it had incurred a cost of $75 for a "Title Update". This was a false representation.   The Law Firm and Stern also claimed it had incurred $60 in postage/copies/ faxes. The Law Firm also claimed it had incurred and was due $1,350 in attorney fees. (See letter dated October 8, 1998, along with invoice from Professional Title, from the Law Firm and Stern attached as Exhibit "E"). The Law Firm had not incurred a charge of $325 from Professional Title for the title search/exam. The Law Firm had not incurred a cost of $75 for a title update nor incurred $60 in postage/copies/faxes.   The Law Firm and Stern further had an agreement with Mellon Mortgage to be paid a flat fee of $1,000 upon completion of the foreclosure action.

-10-

33.     In reliance upon these false representations made by the Law Firm and Stern, Plaintiff Slocum paid the total amount set out in the October 8, 1998 letter.

## CLAIM FOR PUNITIVE DAMAGES

34.     The actions of the Law Firm and Stern in claiming, attempting and threatening to collect costs and attorney fees from Plaintiffs and the Class they represent were intentional and fraudulent and were willful, wanton, and committed with reckless disregard for the rights of Plaintiffs and the Class they represent. It was the regular and routine practice of the Law Firm and Stern to collect excessive and unlawful costs and attorney fees in legal proceedings through filing false and fraudulent affidavits in the Courts of this State and by substantiating certain of these costs using fraudulent invoices from a corporation set up by Stern which has no existence other than to perpetuate the fraudulent scheme on the Court and Debtors. Plaintiffs and the Class they represent demand punitive damages from the Law Firm and Stern in an amount sufficient to punish them for their actions and deter further misconduct.

## CLAIM FOR STATUTORY ATTORNEY FEES

35.     Plaintiffs have retained the undersigned attorneys and are obligated to pay them a reasonable fee for their services.

## DEMAND FOR JURY TRIAL

36.     Plaintiffs demand trial by jury as to all claims so triable.

-11-

## RELIEF DEMANDED

WHEREFORE, Plaintiffs demand the following relief:

a.    That the Court certify the matter as a class action pursuant to the provisions of Fed. R. Civ. P. 23.

b.    That Plaintiffs be awarded damages as set forth in §559.77, Florida Statutes.

c.    That Plaintiffs be awarded punitive damages.

d.    That Plaintiffs be awarded a reasonable attorneys fee as set forth in §559.77, Florida Statutes

e.    That Plaintiffs be awarded costs and such further relief as this Court deems just and proper.

f.    Such injunctive relief as is required to preclude further violations of the Act by the Defendants.

## COUNT II - VIOLATIONS OF THE FEDERAL
## FAIR DEBT COLLECTION PRACTICES ACT

Plaintiffs, EARNEST JACK WELCH and BARBARA JEAN SLOCUM, individually and on behalf of all others similarly situated (collectively referred to as "Plaintiffs"), sue the Defendants, LAW OFFICES OF DAVID J. STERN, P.A. (hereinafter "the Law Firm") and DAVID J. STERN (hereinafter "Stern"), and allege:

-12-

## JURISDICTION AND PARTY DEFENDANTS

37.   This is an action for damages in excess of the jurisdictional limits of the Court for violation of the Fair Debt Collections Practices Act, as set forth in 15 U.S.C. 1692, et seq.. This Court has concurrent jurisdiction pursuant to 15 U.S.C. §1692k(d).

39.   The Law Firm is a Florida corporation and operates within the state of Florida as a law firm. The Law Firm's primary business is collecting debts on behalf of residential mortgage lenders through foreclosure actions which are filed throughout the State of Florida. The Law Firm is a "debt collector" as that term is defined in 15 U.S.C. §1692a(6).

40.   Stern is a resident of the State of Florida and is the sole shareholder, director and officer of the Law Firm. He makes all decisions regarding procedures and policies for the Law Firm. He further personally approves all pleading forms that are utilized by attorneys employed by the Law Firm in prosecuting foreclosure actions. Stern is a "debt collector" as that term is defined in 15 U.S.C. §1692a(6).

## VENUE

41.   Venue is proper in Leon County, Florida, as the violations complained of by the named Plaintiffs occurred in Leon County where the Law Firm filed foreclosure actions against the Plaintiffs and sought to collect costs to which it was not entitled in Leon County.

-13-

## CLASS ALLEGATIONS

42.    Plaintiffs bring this action on behalf of themselves and as representatives of a class pursuant to the provisions of Fed. R. Civ. P. 23. The proposed class Plaintiffs seek to represent consists of all persons from whom the Law Firm and Stern have filed foreclosure actions, in the collection of a "debt", as that term is defined in 15 U.S.C. §1692a(5), and which in the course of collecting the debt the Defendants: (a) used false, deceptive, or misleading representations or means in collecting the debt; and (b) used unfair or unconscionable means to collect or attempt to collect the debt.

43.    The persons from whom the Law Firm and Stern have claimed, attempted, or threatened to collect costs in excess of the amount allowed by law constitute a class so numerous that joinder of all members is impractical. It is estimated that the number of class members is in excess of 1,500 persons.

44.    There are questions of law and fact common to all members of the class: specifically, as to both the named and class Plaintiffs:

(a)    Whether the collection of, or the attempted collection of, costs in excess of the out-of-pocket amount incurred or expended by the Law Firm and Stern is a violation of 15 U.S.C. §§1692(e) and (f).

-14-

(b)     Whether the collection of, or the attempted collection of,

attorneys fees in excess of the amount allowable under Florida Law is

a violation of 15 U.S.C. §§1692(e) and (f).

(c)     Whether the Law Firm's and Stern's use of false invoices

to substantiate unallowable costs is a violation of 15 U.S.C. §§1692(e)

and (f).

45.     Plaintiffs' claims are typical of the claims of the class inasmuch as they

were defendants in foreclosure actions prosecuted by the Law Firm and Stern on

behalf of the lender the Law Firm represented, seeking to collect a debt. During the

course of the litigation: (a) the Law Firm and Stern collected, or attempted to collect,

costs which exceeded the out-of-pocket amount expended by the Law Firm and Stern

in violation of 15 U.S.C. §§1692(e) and (f); (b) the Law Firm and Stern collected, or

attempted to collect, attorney fees which exceeded the amount allowable under

Florida Law in violation of 15 U.S.C. §§1692(e) and (f); or (c) utilized false invoices

to substantiate certain costs which the Law Firm and Stern claimed it had incurred or

expended in violation of 15 U.S.C. §§1692(e) and (f).

46.     Plaintiffs will fairly and adequately represent the interests of the class.

47.     The nature and amount of the individual claims makes it impractical and

judicially inefficient to bring separate individual actions.

-15-

48.    The Law Firm's and Stern's actions are generally applicable to all members of the class. Common questions of law and fact dominate over any questions affecting only individual members of the class. A class action is superior to other available methods for the efficient adjudication of this controversy. Accordingly, this action is maintainable pursuant to Fed. R. Civ. P. 23.

## FACTS RELATIVE TO
## DEFENDANT EARNEST JACK WELCH

49.    On or about April 8, 1998, the Law Firm, as attorney for Countrywide Homes Loans, Inc., filed a foreclosure action against Plaintiff Earnest Jack Welch in Leon County Circuit Court, Case Number 98-1896.

50.    The allegations of paragraphs 23 through 27 are realleged and incorporated herein.

51.    The obligation for which foreclosure proceedings were brought against Plaintiff Welch was a "debt" within the meaning of 15 U.S.C. §1692a(5).

52.    During the foreclosure action, the Law Firm and Stern utilized false, deceptive, and misleading representations in connection with the collection of Plaintiff Welch's mortgage loan in violation of 15 U.S.C. §1692(e).

53.    During the foreclosure action, the Law Firm and Stern used unfair or unconscionable means to attempt to collect Plaintiff Welch's mortgage loan in violation of 15 U.S.C. §1692(f).

-16-

54.     The Law Firm and Stern attempted to collect costs which were in excess of the amount allowed by law.

## FACTS RELATIVE TO DEFENDANT,
## BARBARA JEAN SLOCUM

55.     On or about July 16, 1998, the Law Firm, as attorney for Mellon Mortgage Company, filed a foreclosure action against Plaintiff Slocum in Leon County Circuit Court, Case Number 98-3952.

56.     The obligation for which foreclosure proceedings were brought against Plaintiff Slocum was a "debt" within the meaning of 15 U.S.C. §1692a(5).

57.     The allegations of paragraphs 28 through 33 are realleged and incorporated herein.

58.     During the foreclosure action against Plaintiff Slocum, the Law Firm and Stern used false, deceptive and misleading representations in connection with the collection of Plaintiff Slocum's mortgage loan in violation of 15 U.S.C. §1692(e).

59.     During the foreclosure action against Plaintiff Slocum, the Law Firm and Stern used unfair and unconscionable means to collect on Plaintiff Slocum's mortgage loan in violation of 15 U.S.C. §1692(f).

60.     The Law Firm and Stern collected costs and attorney fees which were in excess of the amount allowed by law and utilized false invoices to substantiate certain of the costs. The Law Firm and Stern collected from Plaintiff Slocum more

-17-

for the cost of title search expenses and for postage/copies/ faxes than the out-of-pocket costs incurred by the Law Firm and Stern.

## CLAIM FOR ATTORNEYS FEES

61.    Plaintiffs have retained the undersigned attorneys and are obligated to pay them a reasonable fee for their services.

## DEMAND FOR JURY TRIAL

62.    Plaintiffs demand trial by jury as to all claims so triable.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs demand the following relief:

a.    That the Court certify the matter as a class action pursuant to the provisions of Fed. R. Civ. P. 23.

b.    That Plaintiffs be awarded damages as set forth in 15 U.S.C. §1692(k).

c.    That Plaintiffs be awarded a reasonable attorneys fee as set forth in section 559.77, Florida Statutes, and as otherwise provided by law.

d.    That Plaintiffs be awarded costs and such further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to: **RICHARD BURTON BUSH, ESQUIRE**, The Bush Law Group, P.A.,

-18-

1301 Metropolitan Blvd., Suite 300, Tallahassee, FL 32308; and **W. WYNDHAM**

**GEYER, JR., ESQUIRE, and STEVEN R. BRATEN, ESQUIRE**, Ruden,

McClosky, Smith, Schuster & Russell, P.A., Post Office Box 1900, Fort Lauderdale,

FL 33302; by regular U. S. Mail this _____ day of September, 1999.

<div style="margin-left:40%">

Claude R. Walker ◆ FBN 0384641
Thomas J. Guilday ◆ FBN 0180872
HUEY, GUILDAY & TUCKER, P.A.
Post Office Box 1794
Tallahassee, FL 32302
(850) 224-7091
(850) 222-2593 fax

**AND**

Kelly Overstreet Johnson ◆ FBN 0354163
BROAD AND CASSEL
Post Office Drawer 11300
Tallahassee, FL 32302
(850) 681-6810
(850) 681-9792 fax

Attorneys for Plaintiffs

</div>

## *CIVIL REMEDY NOTICE OF INSURER VIOLATION*
### INSTRUCTIONS FOR COMPLETING THIS FORM ON REVERSE SIDE

Date Submitted:  11/23/99                       INS. CO. FEIN #: 23-1892289

**1. Company:** Legion Insurance Company

Street Address: c/o Rigdon, Powers & Gioia

City/State/Zip: Lisle, Illinois  60532-1673

Individual(s)Involved: Michael Simkus; Target Capital, Partners

This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

**2. Complainant:** ☒ Insured   ☐ Third Party   ☐ Other

Insured Name: David J. Stern, P.A.                 Policy No.: PL1 0524957

Complainant Name: David J. Stern                   Claim No.: 2-151
                                                    claim dated 10/11/99

Attorney (if any): Ricardo A. Reyes

Street Address: Tobin & Reyes, P.A., 7251 W. Palmetto Park Rd., Suite 205

City/State/Zip/Cnty: Boca Raton, FL 33433, Palm Beach County

**3. TYPE OF INSURANCE:**

☐ Accident & Health              ☐ Life & Annuity              ☐ Residential Property & Casualty

☐ Medicare Supplement            ☐ Auto                        ☐ Commercial Property & Casualty

☒ Miscellaneous  lawyer professional liability

**4. REASON FOR NOTICE:**

☐ Cancellation/Non-renew         ☐ Claim Denial               ☐ Unsatisfactory Settlement Offer

☐ Claim Delay                    ☐ Unfair Trade Practice      ☒ Other refusal to settle covered
                                                                   claim within policy limits

**5. STATUTE(S) ALLEDGEDLY VIOLATED BY INSURER:**

Statute language in effect at the time of filing this notice will be incorporated by reference. If the statute year is different than the year this form is filed, specify the correct statute year ( 19___ )

☐ 627.7283      ☒ 626.9541(1)(i)     ☐ 626.9541(1)(o)    ☐ 626.9541(1)(x)    ☐ 626.9551
☐ 626.9705      ☐ 626.9706           ☐ 626.9707           ☒ 624.155(1)(b)(1)   ☐ 624.155(1)(b)(2)
☐ 624.155(1)(b)(3)                   ☐ Other

**6.** Briefly reference the policy language that is relevant to the violation, if any. Not necessary if third party claim or if policy language is not available.

Under the policy's definitions, "claim expenses" include attorneys' fees and costs charged by any lawyer designated or approved by the Insurer.  Under  the limits of liability, the policy aggregate  of $1,500,000 applies to all claims asserted in the policy.

**7.** Briefly describe the facts and circumstances giving rise to the violation.

Insurer refuses to  pay for attorneys'  fees and costs charged by attorneys they designated and approved to defend  lawsuit against Insured.  Also, Insurer refuses to  apply  policy aggregate  to a multi-plaintiff lawsuit wherein the  plaintiffs have asserted separate claims against Insured.

DI4-363/Rev. 11/98

**EXHIBIT "G"**

# TOBIN & REYES, P.A.

LAW OFFICES
7251 WEST PALMETTO PARK ROAD

RICARDO A. REYES
rar@tobinreyes.com

SUITE 205
BOCA RATON, FLORIDA 33433

TELEPHONE (561) 620-0656
FACSIMILE (561) 620-0657

March 8, 2000

*Via telefax (561) 416-0171 and Federal Express*

Andrew Seiden, Esq.
Seiden, Alder, Rothman, Petosa
 & Matthewman, P.A.
2300 Glades Rd., Suite 340
Boca Raton, Florida 33431

> Re:  Bryant et al. v. Stern (*Bryant Matter*)
> Insureds: Law Offices of David J. Stern P.A. ("DJS") and David Stern ("Stern")
> Legion Policy Nos. PL1-05244957 & PL1-0654864 ("Policies")
> Dates of Claim:  12/9/98 & 10/11/99 (as to the Slocum cause of action)
> Claim Nos. 2-151 & none assigned yet to 10/11/99 claim

Dear Andy:

I wanted to follow up from our last conversation regarding the above referenced matter. As you know, DJS and Mr. Stern agreed to a settlement of all claims with the Plaintiffs in the *Bryant Matter*, including all proposed class members, for the payment of $2.1 to $2.2 million. Given the significant exposure in this matter, everyone involved, including you and Neil Phenes, agreed the settlement amount was reasonable under the circumstances.

Counsel for parties are drafting the settlement documents and a hearing is scheduled at the end of this month for conditional approval by the Court.

As we have stated on repeated occasions, Mr. Stern cannot understand Legion's refusal to settle the matter, refusal to properly investigate the matter, and refusal to promptly pay counsel fees. Because of Legion's unreasonable positions in settling these claims and refusal to protect its insured, they had to come out of pocket to pay the settlement proceeds in order to minimize their risk. If Legion had met its obligations, Mr. Stern and DJS would not have been required to do so.

DJS and Mr. Stern contend that this matter involves multiple claims which should be covered by the aggregate limits under the Policies of $4.5 million. Accordingly, we, once again, request that Legion honor its obligations under the Policies, and to its insureds, by paying the entire settlement amount to the Plaintiffs.

**EXHIBIT "H"**

Andrew Seiden, Esq.
March 8, 2000
Page 2

Although we do not agree with Legion's position that only $500,000 of coverage is available, please notify us immediately whether Legion will pay $500,000, less attorneys fees and costs of this claim, toward the agreed upon settlement of $2.1-$2.2 million. Should Legion pay that amount, it should not be construed, in any way, as an acceptance or acknowledgment of Legion's position as to coverage. By your tender of the single claim limit, Stern and DJS will not release any of their claims against Legion, its representatives and affiliates. It must be clearly understood that DJS and Mr. Stern are reserving all of their claims against Legion, its representatives and affiliates to recover the entire amount of the settlement, as well as other compensatory and punitive damages, attorneys' fees and costs.

Upon your receipt of this letter, please inform us as to Legion's position in regard to participating in the settlement.

Sincerely,

TOBIN & REYES, P.A.

Ricardo A. Reyes

RAR/ac

cc:    Law Offices of David J. Stern, P.A.

## CIVIL REMEDY NOTICE OF INSURER VIOLATION
### INSTRUCTIONS FOR COMPLETING THIS FORM ON REVERSE SIDE

Date Submitted: __3/30/00__                      INS. CO. FEIN #: 23-1892289

| | | | |
|---|---|---|---|
| **1.** | Company: | Legion Insurance Company | Target Capital Partners, Inc. |
| | Street Address: | c/o Rigdon, Powers & Gioia | One Northington Place |
| | City/State/Zip: | Lisle, Illinois 60532-1673 | 35 Tower Lane<br>Avon, CT 06001 |
| | Individual(s) Involved: | | Neil Phenes, Esq. |

This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

**2.** Complainant:   ☒ Insured   ☐ Third Party   ☐ Other                    PL1 065-

Insured Name:   David J. Stern, P.A.                   Policy No.: PL1 0524957   4864

ComplainantName: David J. Stern                        Claim No : ___2-151___
                                                        claim dated 10/11/99
Attorney (if any):   Ricardo A. Reyes

Street Address:   Tobin & Reyes, P.A., 7251 W. Palmetto Park Rd., Suite 205

City/State/Zip/Cnty:   Boca Raton, FL 33433, Palm Beach County

**3. TYPE OF INSURANCE:**

☐ Accident & Health                 ☐ Life & Annuity              ☐ Residential Property & Casualty

☐ Medicare Supplement               ☐ Auto                       ☐ Commercial Property & Casualty

☒ Miscellaneous lawyer professional liability

**4. REASON FOR NOTICE:**

☐ Cancellation/Non-renew            ☐ Claim Denial                ☒ Unsatisfactory Settlement Offer

☒ Claim Delay                       ☒ Unfair Trade Practice       ☒ Other refusal to settle covered
                                                                   claim within policy limits

**5. STATUTE(S) ALLEDGEDLY VIOLATED BY INSURER:**

Statute language in effect at the time of filing this notice will be incorporated by reference. If the statute year is different than the year this form is filed, specify the correct statute year ( 19__ )

☐ 627.7283   ☒ 626.9541(1)(i)   ☐ 626.9541(1)(o)   ☐ 626.9541(1)(x)   ☐ 628.9551
☐ 626.9705   ☐ 626.9706         ☐ 626.9707         ☒ 624.155(1)(b)(1)  ☐ 624.155(1)(b)(2)
☐ 624.155(1)(b)(3)              ☐ Other_____

**6.** Briefly reference the policy language that is relevant to the violation, if any. Not necessary if third party claim or if policy language is not available

Both policies define "claim expenses" to include attorneys' fees and costs charged by any lawyer designated and approved by insurer. The limits of liability for multiple claims are $1.5 million under the first policy and $3 million under the second policy, and those limits apply to all claims asserted during the respective policy periods.

Briefly describe the facts and circumstances giving rise to the violation.

In a multi-plaintiff lawsuit asserting multiple claims against the insured, insurer has refused to promly pay for attorneys' fees and costs charged by attorneys defending insured; refused to properly investigate the claims against the insured; and refused to tender the aggregate policy limits under both policies to settle the claims.

## EXHIBIT "A"

The undersigned, an authorized representative of Legion Insurance Company, hereby consents to the settlement of the Bryant litigation under the terms pending before Judge Hinkle in Federal Court, and further consents to its insureds under Legion Insurance Company policy numbers PL1-05244957 and PL1-0654864 execution of those settlement documents necessary to effectuate the settlement. Legion Insurance Company further states that this consent is not intended, nor shall it be deemed, to be a waiver, release, estoppel, or other defense with regard to any policy or coverage defense, exclusion , defense of no coverage, or claim which it may have now or in the future against its insureds, and which may be asserted by Legion in (a) the defense of any action against it by its insureds, or anyone claiming through its insureds, or (b) the prosecution of any claim or counter-claim against its insureds by Legion. By proceeding with the settlement in this action, Legion's insureds, David J. Stern, P.A., and David J. Stern, individually, are expressly acknowledging the terms of this consent.

**Legion Insurance Company**

By: _Neal Clens_

Name Printed: _Neal Phenes_

as its _President TPA, the thirdparty administrator_

(Title)

Dated: _8/10/00_     _for Legion_

**EXHIBIT "J"**

# SEIDEN, ALDER, ROTHMAN, PETOSA & MATTHEWMAN, P.A.

1300 Glades Road
West Tower - Suite 340
Boca Raton, Florida 33431

Phone: 561.416.0170
Fax: 561.416.0171
www.seidenlaw.com

May 9, 2000

**VIA FACSIMILE AND
CERTIFIED MAIL - RETURN RECEIPT REQUESTED
NO. Z 332-124 951**

David J. Stern, Esq.
Law Offices of David J. Stern, P.A. and
Professional Title and Abstract Company of Florida
801 South University Drive, Suite 500
Plantation, FL 33324

Re:   Bryant v. Stern
      Case No. 4:99CV317-RH, in the United States
      District Court, Northern District of Florida,
      Tallahassee Division
      Legion Policy Nos. PL1-05244957 & PL1-0654864
      Claim No. 2-151
      Our File No. 162.048

Dear Mr. Stern:

By letter dated March 10, 2000, the undersigned, as counsel for Target Professional Associates, Inc. ("TPA") on behalf of Legion Insurance Company ("Legion"), provided you with a Notice of Reservation of Rights concerning the claim made against you in the above-referenced action. Pursuant to Section 627.426, Florida Statutes, TPA, on behalf of Legion, hereby advises you that you have a right to independent counsel which is mutually agreeable to the parties to represent you in this matter. As you know, W. Wyndham Geyer, Jr., Esq. and David M. Schultz, Esq. are cooperating in connection with your defense in this matter. You previously agreed to such independent counsel, and, in fact, you specifically reuqested Mr. Geyer to represent you. Reasonable fees for counsel have been agreed upon by TPA on behalf of Legion, by Mr. Geyer and by Mr. Schultz. Thus, Legion continues to abide by its contractual obligations as set forth within the above-referenced insurance policies, and also continues to abide by its statutory obligations.

**EXHIBIT "K"**

WEST PALM BEACH    •    BOCA RATON    •    MIAMI

David J. Stern, Esq.
Law Offices of David J. Stern, P.A. and
Professional Title and Abstract Company of Florida
May 9, 2000
Page 2

         If anything contained in this letter is in any way incorrect or inaccurate, please
contact the undersigned, or have your counsel do so.

                                     Sincerely,

                                     Andrew Seiden

AS/JBR/nls

cc:    **VIA FACSIMILE TO ALL**
       Neal Phenes, Esq., Target Professional Associates, Inc.
       Michael Simkus, Esq., Target Professional Associates, Inc.
       W. Wyndham Geyer, Jr., Esq.
       David M. Schultz, Esq.
       Ricardo Reyes, Esq.

W:\152.048\L\stern.002 (nls) .wpd